[No. E019258. Fourth Dist., Div. Two. Aug. 19, 1998.]

ARTHUR R. COLTRAIN, JR., et al., Plaintiffs and Appellants, v.
KIM SHEWALTER et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and V.

## COUNSEL

Reid & Hellyer, David G. Moore, James J. Manning, Jr., Daniel E. Katz and Jason C. Gless for Plaintiffs and Appellants.

Mark Goldowitz and Jason Walsh for Defendants and Appellants.

## OPINION

**RICHLI, J.**—Plaintiffs Darlene Coltrain and Arthur R. Coltrain, Jr. (collectively the Coltrains) own and manage Victory Apartments, an apartment complex in downtown Riverside. Defendants Suzette Camacho, Marcos Dominguez, Mike Gorman, David McNiel, Sara Rundle, Clint Shewalter, Kim Shewalter, Theresa Skinner, and Kathleen Smartt (collectively defendants) live in and/or own homes in the neighborhood of Victory Apartments.

Defendants claimed Victory Apartments was a center for drug dealing and other crimes in their community. Each defendant filed a separate nuisance abatement action against the Coltrains in small claims court. (See generally, *Lew* v. *Superior Court* (1993) 20 Cal.App.4th 866 [25 Cal.Rptr.2d 42].) The Coltrains responded by filing this action against defendants for defamation, trade libel, and intentional and negligent infliction of emotional distress.

Defendants, volleying back, claimed this was a strategic lawsuit against public participation (SLAPP); they filed a special motion to strike plaintiffs' complaint under Code of Civil Procedure section 425.16 (sometimes the SLAPP statute). The Coltrains responded by dismissing their complaint.

Defendants, finding the ball in their court again, filed a motion for attorney's fees. The trial court awarded them $73,000 in attorney's fees against the Coltrains under the SLAPP statute.

The Coltrains appeal, contending:

1.  Defendants were not entitled to recover attorney's fees because they did not prevail on their special motion to strike.

2.  Defendants were not entitled to recover attorney's fees because the acts and statements from which the action arose did not concern a public issue.

3.  The trial court awarded an excessive amount of attorney's fees.

Defendants have cross-appealed, contending the trial court awarded an inadequate amount of attorney's fees.

In the published portion of this opinion, we will uphold the trial court's finding that defendants were the prevailing parties on the special motion to strike. In the unpublished portion, we will hold that this action arose from acts in furtherance of defendants' constitutional rights of free speech and

petition in connection with a public issue, and thus defendants were entitled to recover attorney's fees under the SLAPP statute; however, we find insufficient evidence to support the amount of attorney's fees awarded. Accordingly, we must reverse and remand.

## I

### FACTUAL BACKGROUND

The following facts are taken from the evidence in support of defendants' special motion to strike.

In February 1995, Darlene Coltrain became the owner of an apartment complex called Victory Apartments at Fourth Street and Fairmount Boulevard in downtown Riverside. She placed her son, Arthur Coltrain, in charge of its management.

Each of the defendants lives in and/or owns residential property in the neighborhood of Victory Apartments.

In 1995, gunshots, screaming, obscenities, sounds of fighting, loud music, and other loud noises regularly came from Victory Apartments. These noises continued throughout the night and prevented neighbors from sleeping.

Gang members lived in Victory Apartments and hung out in the vicinity. Prostitutes and drug dealers plied their respective trades there. Drug users smoked "crack" in the stairwells. Prostitutes accosted defendant Kathleen Smartt's 16-year-old son; men hanging around the apartments propositioned defendant Kim Shewalter's 14-year-old and 16-year-old daughters. Passersby urinated in the bushes. Residents of Victory Apartments threw furniture, bricks, and compact discs off their balconies and scattered trash around the neighborhood.

Although there had been similar problems before the Coltrains took over Victory Apartments, after they did so, these problems became distinctly worse. In the year after the Coltrains took over, the police were called out to Victory Apartments 37 times, an increase of 32 percent over the previous year. Fourteen of these calls were regarding "Part I"—i.e., relatively serious—offenses, an increase of 75 percent. The police were called out regarding drug offenses in the general neighborhood some 46 times, an increase of 44 percent.

After defendant Theresa Skinner complained to police, she found her tires slashed. Defendant Kim Shewalter's car was stolen, and her family's dog

was poisoned. One night, when the Shewalters were returning home from a trip to Magic Mountain, one resident of Victory Apartments trained the laser sight of a gun on each family member in turn, while he or his companions taunted them, saying, "[N]eighborhood watch, ha, ha."

Individual neighbors contacted Arthur Coltrain to bring these problems to his attention, but he was unresponsive.

In July 1995, some of the defendants organized a neighborhood watch group called Neighbors United. They held their first meeting in August 1995. The meeting was attended by the Mayor of Riverside, City Councilmember Chuck Beaty, Assistant City Attorney Joel Stern, and several police officials, in addition to perhaps 75 to 100 residents of the community. Coltrain was invited to attend but declined.

Stern, addressing the group, told them one of their options in dealing with an unresponsive property owner was to file a nuisance abatement action in small claims court. Nevertheless, the group decided not to pursue the small claims strategy right away; instead, its members continued to seek the Coltrains' cooperation. They asked the Coltrains to do three things: to install lighting, to install secure fencing around the apartments, and to participate in the city's Crime Free Multi-Housing Program. The Coltrains refused.

On October 17, 1995, Dwayne Rasheed, a reputed gang member and drug dealer, was shot and killed in front of Victory Apartments. For defendants, this was "the last straw"; they decided to move ahead with the small claims strategy.

Defendants understood that, before filing a small claims action, they had to make a demand for payment. Defendant Mike Gorman drafted a form demand letter and gave it to those neighbors who were interested; he told them to check off the complaints that were applicable to them and to describe specific incidents. Sixteen neighbors filled out and signed demand letters. Gorman collected the individual demand letters; on November 3, 1995, he mailed them all to the Coltrains. The Coltrains never responded.

On November 7, 1995, the Riverside Press-Enterprise published a column by Dan Bernstein, entitled "The Boulevard Hanging in the Balance." It discussed crime along Fairmount Boulevard, including the murder of Rasheed. It described Victory Apartments as "a target of city and property owner concern." Defendant Kim Shewalter was quoted as saying, "Over the last nine months, it has been the source of all of our problems." It also quoted defendant Sara Rundle, although she did not mention the Coltrains or Victory Apartments.

Neighbors United continued to negotiate with the Coltrains' attorney, but no agreement was reached. Its members obtained government funding for a fence, but the Coltrains still refused to install one.

On February 20 and 21, 1996, defendants each filed a separate small claims action against the Coltrains. They alleged claims for abatement of a building used for selling controlled substances, as a public nuisance (Health & Saf. Code, § 11570), interference with the use and enjoyment of their property, decreased property value, and mental suffering.

## II

### PROCEDURAL BACKGROUND

On March 19, 1996, the Coltrains filed a complaint in superior court, asserting causes of action for trade libel, defamation, and intentional and negligent infliction of emotional distress. The named defendants were the nine neighbors who had filed small claims actions against them. The Coltrains did *not* sue those neighbors who had sent demand letters but had not filed small claims actions. The Coltrains sought $250,000 in compensatory damages, and $1 million in punitive damages.

In support of their causes of action for trade libel and defamation, the Coltrains alleged: "On or about November 3, 1995, defendants and each of them, intentionally, wrongfully, without justification, and without privilege published a letter which stated, among other items, that because of the way plaintiffs owned, managed, and operated the Victory Apartments, plaintiffs caused, encouraged, facilitated, and assisted, crimes and public nuisances such as drug dealing, prostitution, excess trash, thefts, brawling, murder, vagrancy's [*sic*], among other items. Defendant' [*sic*] and each of them, also conspired among themselves to cause others to publish similar letters. In addition thereto, Defendant Kim Shewalter and others, orally made similar statements to the general public, a portion of said statements being published in the Riverside Press Enterprise Newspaper on November 7, 1995."

In support of their causes of action for intentional and negligent infliction of emotional distress, the Coltrains incorporated the previous allegations by reference, and further alleged: "Defendants conspired to force plaintiffs to operate the apartments pursuant to Defendants' whims, re-design and re-build the Victory Apartments in an unnecessary manner by conspiring among themselves to file unwarranted criminal complaints, unjustified complaints with the city government, and solicit factually inaccurate newspaper articles."

On March 26, 1996, the Coltrains filed a request to have the small claims actions transferred to superior court. (Code Civ. Proc., § 116.390.) On March 28, 1996, the trial court granted the request and ordered the transfer.

On May 2, 1996, defendants filed an answer to the complaint. Defendants were represented by attorneys from three separate law firms: Meredith A. Jury and Juliann Anderson of Best, Best & Krieger (BB&K); Mark Goldowitz of Goldowitz Law Offices; and Jason R. Walsh of Jacobs & Gregory.

On May 9, 1996, the parties stipulated to postpone the deadline for filing a special motion to strike under the SLAPP statute until July 1, 1996, because they were engaged in settlement negotiations.

On June 5, 1996, the Coltrains filed a motion for leave to amend their complaint. On June 13, 1996, they filed a motion to disqualify BB&K.

Evidently any settlement negotiations failed, because on July 1, 1996, defendants filed a special motion to strike.

On July 10, 1996, the Coltrains voluntarily dismissed their complaint without prejudice. As a result, the three pending motions—defendants' special motion to strike, and the Coltrains' motions for leave to amend and to disqualify BB&K—were never ruled on. Defendants' original small claims actions were reassigned to small claims court.

On September 6, 1996, defendants filed a motion for attorney's fees under Code of Civil Procedure section 425.16, subdivision (c), or alternatively under Code of Civil Procedure section 1021.5. The motion was filed through Attorneys Goldowitz and Walsh. It sought $75,273.53, representing all the fees for their services and those of attorneys working under them; it did not seek any fees for BB&K's services.

On October 11, 1996, after a hearing, the trial court granted the motion. It awarded $73,000 in attorney's fees under Code of Civil Procedure section 425.16, subdivision (c). However, it declined to award fees under Code of Civil Procedure section 1021.5.

On October 18, 1996, the Coltrains filed a notice of appeal. On October 31, 1996, defendants filed a notice of cross-appeal.

## III

### THE ACTION AROSE OUT OF ACTS IN FURTHERANCE OF DEFENDANTS' FIRST AMENDMENT RIGHTS IN CONNECTION WITH A PUBLIC ISSUE*

. . . . . . . . . . . . . . . . . . . . . .

## IV

### THE TRIAL COURT'S FINDING THAT DEFENDANTS WERE THE PREVAILING PARTIES ON THE SPECIAL MOTION TO STRIKE

The Coltrains contend defendants were not entitled to attorney's fees because they were not "prevailing defendant[s] on a special motion to strike" within the meaning of Code of Civil Procedure section 425.16, subdivision (c).

The trial court ruled that defendants were the prevailing parties. It explained: "If you look at CCP 1032, [s]ubdivision (a), [s]ubsection (4), it tells you who the prevailing party is. And that's someone who gets a case dismissed[,] or a case is dismissed and it terminates the case." "[I]t doesn't say in th[e] [SLAPP] statute that it must be that the defendant is successful in the hearing on the special motion to strike . . . . It just says they must be the prevailing defendant on a special motion to strike. [¶] So therefore, I think 1032, [s]ubdivision (a), [s]ubsection (4) does apply."

The issue before us is primarily one of statutory interpretation. Code of Civil Procedure section 425.16, subdivision (c) provides: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." However, it does not otherwise define "prevailing."

In cases where there has been a voluntary dismissal, " 'prevailing party' has no settled technical meaning . . . ." (*Santisas* v. *Goodin* (1998) 17 Cal.4th 599, 609 [71 Cal.Rptr.2d 830, 951 P.2d 399].) In some instances, the Legislature has headed the issue off at the pass by specifying in the applicable statute whether a voluntary dismissal makes the defendant the prevailing party. For example, under Code of Civil Procedure section 1032, costs are to be awarded to the "prevailing party." (Code Civ. Proc., § 1032, subd. (b).) As defined in Code of Civil Procedure section 1032, "prevailing party" specifically includes "a defendant in whose favor a dismissal is entered . . . ." (Code Civ. Proc., § 1032, subd. (a)(4); see also Civ. Code,

*See footnote, *ante*, page 94.

§ 798.85 [In action under the Mobilehome Residency Law, "[a] party shall be deemed a prevailing party . . . where the litigation is dismissed in his or her favor prior to or during the trial, unless the parties otherwise agree in the settlement or compromise."].)

On the other hand, under Civil Code section 1717, in an action on a contract with an attorney's fees provision, attorney's fees are to be awarded to "the party prevailing on the contract." (Civ. Code, § 1717, subd. (a).) Civil Code section 1717 specifically provides that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party . . . ." (Civ. Code, § 1717, subd. (b)(2); see also Civ. Code, § 3176 [In action on bonded stop notice, "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party . . . ."].)

The vast majority of attorney's fee statutes do not explicitly provide for the event of a voluntary dismissal. In *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218 [145 Cal.Rptr. 691, 577 P.2d 1031], the Supreme Court was called upon to resolve this issue under Civil Code section 1717 as it then stood, which merely provided: " ' "[P]revailing party" means the party in whose favor final judgment is rendered.' " (*International Industries, Inc.* v. *Olen, supra*, at p. 222, italics omitted, quoting former Civ. Code, § 1717, Stats. 1968, ch. 266, § 1, p. 578.) As the court noted, where the plaintiff voluntarily dismisses before trial, there are three possibilities: (1) automatically awarding attorney's fees to the defendant; (2) "providing for application of equitable considerations . . ."; or (3) automatically denying attorney's fees. (*International Industries, Inc.* v. *Olen, supra*, at p. 225.)

The court rejected an automatic award of attorney's fees to the defendant, as inequitable: "Although a plaintiff may voluntarily dismiss before trial because he learns that his action is without merit, obviously other reasons may exist causing him to terminate the action. For example, the defendant may grant plaintiff—short of trial—all or substantially all relief sought, or the plaintiff may learn the defendant is insolvent, rendering any judgment hollow. . . . Moreover, permitting recovery of attorney fees by defendant in all cases of voluntary dismissal before trial would encourage plaintiffs to maintain pointless litigation in moot cases or against insolvent defendants to avoid liability for those fees." (*International Industries, Inc.* v. *Olen, supra*, 21 Cal.3d at p. 224.)

The court also rejected a case-by-case approach: "It has been suggested that in pretrial dismissal cases the court should determine whether, and to what extent, the complaint is meritorious and award attorney fees accordingly. However, to arrive at that determination would require the court to try

the entire case. The purpose of litigation is to resolve participants' disputes, not compensate participating attorneys. Our courts are sufficiently burdened without combat kept alive solely for attorney fees." (*International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d at p. 224.)

The court concluded, as a matter of "sound public policy and recognized equitable considerations" (*International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d at p. 223), that, if the plaintiff voluntarily dismissed before trial, the defendant was not the prevailing party and could not recover attorney's fees under Civil Code section 1717. (*International Industries, Inc.* v. *Olen, supra,* at pp. 223-225.) In 1981, the Legislature amended Civil Code section 1717 so as to adopt the holding of *Olen.* (Stats. 1981, ch. 888, § 1, p. 3399; see *Hsu* v. *Abbara* (1995) 9 Cal.4th 863, 873 [39 Cal.Rptr.2d 824, 891 P.2d 804].)

Recently, however, the Supreme Court retreated from its position in *Olen.* In *Santisas* v. *Goodin, supra,* 17 Cal.4th 599, the plaintiffs asserted both contract and tort causes of action, all based on a contract with an attorney's fees clause which allowed "the prevailing party" to recover attorney's fees in any legal action "arising out of" the contract. (*Id.,* at p. 603.) Eventually, the plaintiffs voluntarily dismissed their complaint. The trial court then awarded attorney's fees to some of the defendants. (*Id.,* at pp. 603-604.) The Supreme Court recognized that, under *Olen,* as codified in Civil Code section 1717, these defendants were not the prevailing parties on the contract claims. It held, however, the defendants could be the prevailing parties on the tort claims under the contractual attorney's fee provision and under Code of Civil Procedure sections 1032 and 1033.5, subdivision (a)(10). (*Santisas* v. *Goodin, supra,* at pp. 614-623.)

The court explained: "[U]pon fresh consideration of the matter, we are of the view that the practical difficulties associated with contractual attorney fee cost determinations in voluntary pretrial dismissal cases are not as great as suggested by the majority in *Olen* . . . . The *Olen* majority soundly reasoned that attorney fees should not be awarded *automatically* to parties in whose favor a voluntary dismissal has been entered. In particular, it seems inaccurate to characterize the defendant as the 'prevailing party' if the plaintiff dismissed the action only after obtaining, by means of settlement or otherwise, all or most of the requested relief, or if the plaintiff dismissed for reasons, such as the defendant's insolvency, that have nothing to do with the probability of success on the merits. The *Olen* majority also soundly reasoned that scarce judicial resources should not be used to try the merits of voluntarily dismissed actions merely to determine which party would or should have prevailed had the action not been dismissed. But we do not

agree that the only remaining alternative is an inflexible rule denying contractual attorney fees as costs in all voluntary pretrial dismissal cases. Rather, a court may determine whether there is a prevailing party, and if so which party meets that definition, by examining the terms of the contract at issue . . . . If, as here, the contract allows the prevailing party to recover attorney fees but does not define 'prevailing party' or expressly either authorize or bar recovery of attorney fees in the event an action is dismissed, a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise. [Citation.]" (*Santisas* v. *Goodin, supra,* 17 Cal.4th at pp. 621-622.)

In the case before it, the court held the defendants were indeed the prevailing parties: "Plaintiffs' objective in bringing this litigation was to obtain the relief requested in the complaint. The objective of the . . . defendants in this litigation was to prevent plaintiffs from obtaining that relief. Because the litigation terminated in voluntary dismissal with prejudice, plaintiffs did not obtain by judgment any of the relief they requested, nor does it appear that plaintiffs obtained this relief by another means, such as a settlement. Therefore, plaintiffs failed in their litigation objective and the . . . defendants succeeded in theirs. Giving the term 'prevailing party' its ordinary or popular meaning, the . . . defendants are the 'prevailing part[ies]' under their agreement with plaintiffs . . . ." (*Santisas* v. *Goodin, supra,* 17 Cal.4th at p. 609.)

Even before *Santisas,* two lower courts had applied a similar approach in construing statutes which did not define "prevailing party." In *Heather Farms Homeowners Assn.* v. *Robinson* (1994) 21 Cal.App.4th 1568 [26 Cal.Rptr.2d 758], the statute involved was Civil Code section 1354, subdivision (f), which provides that, in an action to enforce condominium conditions, covenants, and restrictions, "the prevailing party shall be awarded reasonable attorney's fees and costs." As a result of an agreement to settle complex multiparty litigation, the plaintiff voluntarily dismissed the complaint as to all defendants, including one who had not agreed to be bound by the settlement agreement. The trial court found the nonsettling defendant was a prevailing party for purposes of costs, but not for purposes of attorney's fees. (*Heather Farms Homeowners Assn.* v. *Robinson, supra,* at pp. 1570-1571.)

The defendant argued the prevailing party for purposes of attorney's fees should be the same as the prevailing party for purposes of costs, and therefore the court should apply the general costs statute, Code of Civil Procedure section 1032, which provides that after a voluntary dismissal the defendant is the prevailing party. The appellate court disagreed: "[T]he

premise for this argument, that a litigant who prevails under the cost statute is necessarily the prevailing party for purposes of attorney fees, has been uniformly rejected by the courts of this state. [Citation.]" (*Heather Farms Homeowners Assn.* v. *Robinson, supra,* 21 Cal.App.4th at p. 1572.)

The plaintiff, on the other hand, argued the court should be guided by the definition of "prevailing party" in Civil Code section 1717, which provides that after a voluntary dismissal there is no prevailing party. Again, the court disagreed: "While the definition of 'prevailing party' found in section 1717, subdivision (b) or in Code of Civil Procedure section 1032 might otherwise be persuasive as to the meaning intended in section 1354, under the principle that similar language used in statutes 'in pari materia' should be given similar effect [citations], that rule of construction is of little help here. Section 1717, subdivision (b) and Code of Civil Procedure section 1032 are both 'in pari materia' with section 1354 in a broad sense, yet they provide conflicting definitions of the critical term. Neither party to this appeal has supplied a principled reason why we should select one definition over the other." (*Heather Farms Homeowners Assn.* v. *Robinson, supra,* 21 Cal.App.4th at pp. 1572-1573.)

After reviewing cases dealing with similar statutes, the court summarized them as follows: "In each case, the court declined to adopt a rigid interpretation of the term 'prevailing party' and, instead, analyzed which party had prevailed on a practical level. [Some of the cases] further clarify that the trial court must determine who is the prevailing party, and . . . the court's ruling should be affirmed on appeal absent an abuse of discretion. We conclude similar rules should apply when determining who the 'prevailing party' is under [Civil Code] section 1354." (*Heather Farms Homeowners Assn.* v. *Robinson, supra,* 21 Cal.App.4th at p. 1574.)

The court upheld the trial court's ruling that the defendant had not prevailed: "The [plaintiff] voluntarily dismissed its complaint against [the defendant] as part of a global settlement agreement, not because he succeeded on some procedural issue or otherwise received what he wanted. That dismissal apparently was more the result of [the defendant's] obdurate behavior rather than any successful legal strategy." (*Heather Farms Homeowners Assn.* v. *Robinson, supra,* 21 Cal.App.4th at p. 1574.)

Similarly, in *Gilbert* v. *National Enquirer, Inc.* (1997) 55 Cal.App.4th 1273 [64 Cal.Rptr.2d 659], the controlling statute was Civil Code section 3344, subdivision (a), which provides that in an action for commercial misappropriation of name or likeness, "[t]he prevailing party . . . shall also be entitled to attorney's fees and costs." The plaintiff had voluntarily dismissed her commercial misappropriation complaint before trial. The trial court nevertheless denied the defendant's motion for attorney's fees, ruling it

was not the prevailing party. (*Gilbert* v. *National Enquirer, Inc., supra*, at p. 1275.)

On appeal, the defendant argued the court should look to Code of Civil Procedure section 1032. (*Gilbert* v. *National Enquirer, Inc., supra*, 55 Cal.App.4th at p. 1276.) The court, however, declined to do so. It found *Heather Farms* "on point." (*Id.*, at p. 1277.) It therefore held, quoting *Heather Farms*: " '[T]he trial court must determine who is the prevailing party' " by " 'analyz[ing] which party had prevailed on a practical level.' " (*Ibid.*, quoting *Heather Farms Homeowners Assn. Inc.* v. *Robinson, supra*, 21 Cal.App.4th at p. 1574.)

The appellate court upheld the trial court's finding that the defendant was not the prevailing party. It reasoned the plaintiff's commercial misappropriation claims had successfully withstood a demurrer, even though her libel and invasion of privacy claims had not; the plaintiff claimed she dismissed her commercial misappropriation claims to expedite an appeal regarding the libel and invasion of privacy claims; and insufficient discovery had been taken to permit a determination as to who was the prevailing party. (*Gilbert* v. *National Enquirer, Inc., supra*, 55 Cal.App.4th at p. 1277; see also *Damian* v. *Tamondong* (1998) 65 Cal.App.4th 1115, 1116-1118 [77 Cal.Rptr.2d 262] [After voluntary dismissal, trial court has discretion to determine prevailing party for purposes of attorney's fees under Rees-Levering Automobile Sales Finance Act (Civ. Code, § 2983.4); neither Civ. Code, § 1717 nor Code Civ. Proc., § 1032 is controlling.])

The Coltrains try to distinguish *Heather Farms* and *Gilbert*, arguing the statutes involved in those cases allowed attorney's fees to the party who prevailed in the entire action, whereas here the SLAPP statute merely allows attorney's fees to the party who prevails on a motion. We fail to see the distinction. The motion at issue is, after all, a motion to strike the complaint. Thus, in both situations, when the plaintiff dismisses the complaint, it voluntarily cedes to the defendant all the relief the trial court could have granted if the matter had been pressed to a ruling. The principle that the defendant need not obtain a ruling from the court in order to "prevail" for purposes of attorney's fees applies equally in both situations.

We do not believe the policies behind the SLAPP statute call for any different result. Certainly these policies do not support the Coltrains' contention that a voluntary dismissal should *automatically* preclude an award of attorney's fees to the defendant. Otherwise, SLAPP plaintiffs could achieve most of their objective with little risk—by filing a SLAPP suit, forcing the defendant to incur the effort and expense of preparing a special motion to strike, then dismissing the action without prejudice. The specter of the action being refiled (at least until the statute of limitations had run) would continue

to have a significant chilling effect on the defendant's exercise of its First Amendment rights. At that point, the plaintiff would have accomplished all the wrongdoing that triggers the defendant's eligibility for attorney's fees, but the defendant would be cheated of redress.

On the other hand, these policies likewise do not support defendants' contention that a voluntary dismissal while a special motion to strike is pending should *automatically* entitle a defendant to attorney's fees. At that point, there has been no judicial determination that the action is in fact a SLAPP suit. Also, regardless of whether the action is a SLAPP suit or not, the plaintiff may have good faith reasons for the dismissal that have nothing to do with oppressing the defendant or avoiding liability for attorney's fees.

We conclude that where the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under Code of Civil Procedure section 425.16, subdivision (c). In making that determination, the critical issue is which party realized its objectives in the litigation. Since the defendant's goal is to make the plaintiff go away with its tail between its legs, ordinarily the prevailing party will be the defendant. The plaintiff, however, may try to show it actually dismissed because it had substantially achieved its goals through a settlement or other means, because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits.

Here, the trial court applied an erroneous legal standard. It deemed Code of Civil Procedure section 1032 controlling; thus, it failed to exercise its discretion to find that defendants were not the prevailing parties. Nevertheless, we believe it reached the correct result. ■ " 'There is perhaps no rule of review more firmly established than the principle that a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion.' [Citation.]" (*Tippett* v. *Terich* (1995) 37 Cal.App.4th 1517, 1539 [44 Cal.Rptr.2d 862], quoting *Belair* v. *Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070].)

■ Upon the Coltrains' voluntary dismissal, a presumption arose that defendants were the prevailing parties. There was no evidence that the Coltrains' reasons for dismissing were such as to dispel this presumption. The Coltrains claim they dismissed because they had run out of money. However, they introduced no evidence to support this claim. In any event, this reason, if proved, would only confirm that defendants were the prevailing parties on the motion to strike. The Coltrains are essentially admitting

they filed an action they could not afford to win, Indeed, this arguably proves it was a pure SLAPP suit.

There was some evidence the Coltrains dismissed the action because they had agreed to install lighting, to install a fence around the apartments, and to participate in the city's Crime Free Multi-Housing Program. The Coltrains do not mention this evidence in this appeal; they maintain they dismissed solely and exclusively because they had run out of money. Thus, they have waived any claim the trial court erred by failing to consider this evidence. In any event, this reason would mean the Coltrains not only dismissed their action against defendants, but also gave defendants everything they were really seeking in the small claims actions. Thus, this reason, too, would confirm that defendants were the prevailing parties on the motion to strike.

We conclude the trial court correctly found that defendants were the prevailing parties on the special motion to strike.

## V

### THE AMOUNT OF ATTORNEY'S FEES AWARDED*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

### DISPOSITION

Regarding defendants' entitlement to an award of attorney's fees, the order appealed from is affirmed. Regarding the amount of the award of attorney's fees, the order appealed from is reversed. The matter is remanded to the trial court for further proceedings. Defendants shall recover attorney's fees and costs on appeal, in amounts to be determined, upon proper application, in the trial court. (*Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830]; *Church of Scientology* v. *Wollersheim* (1996) 42 Cal.App.4th 628, 659-660 [49 Cal.Rptr.2d 620]; *Evans* v. *Unkow* (1995) 38 Cal.App.4th 1490, 1499-1500 [45 Cal.Rptr.2d 624].)

Ramirez, P. J., and Gaut, J., concurred.

---

*See footnote, *ante*, page 94.