Filed 6/22/21; Certified for Publication 7/15/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHAMPIR, LLC, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> FAIRBANKS RANCH ASSOCIATION, <br><br> Defendant and Appellant. | D077384 <br><br><br> (Super. Ct. No. 37-2018-00028289-CU-NP-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Gordon & Rees Scully Mansukhani, Thomas J. Stoddard and Casey Shaw for Defendant and Appellant.

Nicholas & Tomasevic, Craig M. Nicholas and Ethan T. Litney for Plaintiffs and Respondents.

INTRODUCTION

Champir, LLC (Champir), Daniel Javaheri, and Shiva Dehghani (collectively, Plaintiffs) sued the Fairbanks Ranch Association (the Association) to enforce the recorded covenants, conditions, and restrictions

(CC&Rs) of their planned development community.  Upon resolution of the litigation, both parties sought an award of attorney fees and costs as the "prevailing party" under Civil Code section 5975, subdivision (c).[1]  The court determined Plaintiffs were the prevailing party and entered judgment for Plaintiffs with an award of $112,340 in attorney fees, plus costs of suit.  The Association appeals, asserting the court should have determined that it was the prevailing party in the litigation.  We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Plaintiffs' Lawsuit*

Champir owns a home in Fairbanks Ranch, a planned development community in Rancho Santa Fe, California, where Javaheri and his wife, Dehghani, reside.  Javaheri is the manager and a member of Champir.  The Association is a non-profit homeowners' association that governs and oversees the common areas of Fairbanks Ranch pursuant to recorded CC&Rs.  Champir is a member of the Association with voting rights under the CC&Rs.

In June 2018, Plaintiffs sued the Association over a dispute arising from the Association's plan to install traffic signals at the entrance gates of Fairbanks Ranch, one of which would be directly outside Plaintiffs' home.

Plaintiffs alleged that in May 2008 the Association obtained majority approval from its voting members to spend a little over $5.3 million for improvements to the common areas, including installation of traffic signals at two entrance gates to Fairbanks Ranch, Gates 1 and 6 (Gates Project).  The

---

[1]     All further undesignated statutory references are to the Civil Code, unless specified otherwise.

2

Gates Project was to be funded with money received from the Association's settlement of an unrelated lawsuit in 2000, totaling $3.2 million, and a special assessment against the properties in Fairbanks Ranch for the balance. In June 2017, the Association moved $390,470 of the funds approved for the Gates Project into another fund called the San Dieguito Road Safety Fund. The Association believed that amount represented funds from the 2000 settlement that may have been improperly designated for " 'purposes outside the scope of the settlement fund.' "

In October 2017, the Association informed its members that it had obtained approval from the County Board of Supervisors for installation of traffic signals at Gates 2 and 6, rather than Gates 1 and 6, as originally approved by the members. Plaintiffs' home is at the intersection of Gate 2, "directly next to the proposed traffic signal." Plaintiffs claimed that this was the first time they learned of the Association's intention to install a traffic signal at Gate 2. In a written notice, the Association told members that " '[t]he Board worked through the administrative process quietly to avoid the political hurdles [their] community encountered in past attempts to get speed control on San Dieguito Road. That is the reason [homeowner members] may not have been aware of this effort until now.' " A month later, the Association informed its members that it was in the process of collecting bids and the traffic signals would be completed within six months.

Plaintiffs alleged the Association breached the CC&Rs and exceeded its authority in several ways. First, the Association failed to request a vote and obtain approval from its members before entering into a contract to install the traffic signals at Gates 2 and 6. Such a vote, according to Plaintiffs, was required by the CC&Rs for any capital expenditure that exceeded five percent of the Association's annual budget for the year allocated, or $200,000 for the

3

relevant time period. Here, the contracted price for the project was estimated to cost $430,000. Second, the Association improperly proposed to pay for the traffic signals at Gates 2 and 6 with money previously approved by members in 2008 for the Gates Project involving Gate 1, without a new vote authorizing a different use of previously allocated funds. Third, the Association planned to transfer operation and maintenance of the traffic signals after construction to the County of San Diego, which Plaintiffs alleged would be an improper transfer of Association funds to a third party, without a prior vote or majority approval.

Plaintiffs asserted five causes of action, including claims for breach of governing documents, trespass, nuisance, declaratory relief, and injunctive relief. Plaintiffs claimed the proposed traffic light at Gate 2 would encroach on their property and cause a nuisance as a result of "increased noise, traffic, pollution, and light." In addition to monetary damages, Plaintiffs sought to enjoin the Association from construction of the traffic lights until a judicial determination of the rights and responsibilities of the parties.

II.

*The TRO and Preliminary Injunction*

On June 14, 2018, the trial court granted Plaintiffs' ex parte application for a temporary restraining order (TRO) and enjoined the Association from construction of a traffic signal at Gate 2, pending a hearing on Plaintiffs' motion for a preliminary injunction.

The Association filed a request to modify the TRO to enjoin it from construction of "any part of the Gate 2 traffic signal on Plaintiff[s'] property" only. It presented evidence of a professional land survey to show construction of the traffic signal would not encroach on Plaintiffs' property. On June 21, 2018, the trial court modified the TRO to allow the project to proceed on "non-

4

plaintiff land" but enjoined the Association from construction of any part of the traffic signal on Plaintiffs' property.

On September 7, 2018, Plaintiffs filed a motion for a preliminary injunction against the Association, seeking to enjoin it from construction of the traffic signal at Gate 2 and further expenditure of funds for the traffic signal at Gate 2. On October 5, the court granted Plaintiffs' motion in part and issued a preliminary injunction enjoining the Association from proceeding with construction of the traffic signal at Gate 2 during the pendency of the lawsuit. The court specifically found that "Plaintiffs have established a reasonable probability of success on the merits of their claim for breach of the Association's governing documents and that Plaintiffs will suffer irreparable injury if the injunction is not issued."

On November 20, 2018, the Association requested the court dissolve the preliminary injunction due to a "material change in the facts." After the preliminary injunction was issued, the Association had requested a vote and obtained written consent from a majority of its members to proceed with construction of the traffic signal at Gate 2, even if expenditures exceeded 5 percent of its budgeted expenses for the year. The Association argued it would, therefore, be acting within its authority under the CC&Rs to install the traffic signal at Gate 2. On December 14, the court ordered the preliminary injunction dissolved, finding a material change in facts based on the Association's evidence showing that it "recently obtained the written consent of a majority of the Association's members to proceed with the installation of a traffic signal at Gate 2." Accordingly, the court concluded "the evidence no longer support[ed] restraining the Association" from constructing the traffic signal at Gate 2.

5

III.

*Prevailing Party Fee Award*

After the preliminary injunction was dissolved, Plaintiffs voluntarily dismissed their causes of action for trespass and nuisance on May 1, 2019 and the remaining causes of action on September 17, 2019.[2] Plaintiffs and the Association then filed respective motions for attorney fees, each claiming to be the prevailing party under section 5975, subdivision (c). The Association also requested attorney fees pursuant to the CC&Rs, which provided that the Association would be entitled to reimbursement of its legal expenses if a member sued it and the Association was " 'successful or sustained in its position in such suit.' "

On November 5, 2019, after a hearing, the trial court determined Plaintiffs, and not the Association, were the prevailing party. The court awarded Plaintiffs their attorney fees in the amount of $112,340 and denied the Association's motion for attorney fees. On December 6, the court entered judgment for Plaintiffs. The Association appeals, asserting the trial court should have found that it was the prevailing party.

---

[2]    Plaintiffs had previously moved on May 14, 2019 for an order dismissing the entire action "for mootness" and a determination that they were the "prevailing party" entitled to attorney fees. The court denied Plaintiffs' motion because it was not persuaded the statute cited by Plaintiffs authorized dismissal and stated Plaintiffs may seek dismissal of their remaining claims under Code of Civil Procedure section 581, subdivision (b). The court also denied Plaintiffs' request for a determination of prevailing party as premature because judgment had not been entered.

6

DISCUSSION

I.

*"Prevailing Party" Under Section 5975*

The Davis-Stirling Common Interest Development Act (Davis-Stirling Act or the Act) governs an action to enforce the recorded CC&Rs of a common interest development. (§§ 4000–6150 [formerly sections 1350–1376].) Section 5975 provides that CC&Rs may be enforced as equitable servitudes, unless unreasonable, and "[i]n an action to enforce the governing documents [of a common interest development], the prevailing party shall be awarded reasonable attorney[ ] fees and costs." (§ 5975, subds. (a), (c).) The prevailing party is entitled to attorney fees " '*as a matter of right*' " and the trial court is " '*obligated* to award attorney fees[ ] whenever the statutory conditions have been satisfied.' " (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1152 (*Salehi*) [construing former section 1354], quoting *Hsu v. Abarra* (1995) 9 Cal.4th 863, 872 (*Hsu*).)

The Act does not define "prevailing party." However, it is well established that "[t]he analysis of who is a prevailing party under the fee-shifting provisions of the Act focuses on who prevailed 'on a practical level' by achieving its main litigation objectives[.]" (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 260 (*Rancho Mirage*), citing *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 (*Heather Farms*); *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 94 (*Villa De Las Palmas*) [affirming trial court's determination that an association was the prevailing party because "[o]n a 'practical level' [citation], [it] 'achieved its main litigation objective' "]; *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 773 (*Almanor*) ["[T]he test for prevailing party is a pragmatic one, namely

7

whether a party prevailed on a practical level by achieving its main litigation objectives."].)

## II.

### *Standard of Review*

On appeal, the Association's sole contention is that the trial court "incorrectly concluded that the [Plaintiffs] were the prevailing parties in this action, and that [the Association] was not the prevailing party."[3] It does not challenge the reasonableness of the fee amount.

We review the trial court's determination of the prevailing party under the Davis-Stirling Act for abuse of discretion. (*Villa De Las Palmas, supra,* 33 Cal.4th at p. 94; *Rancho Mirage, supra,* 2 Cal.App.5th at p. 260; *Almanor, supra,* 246 Cal.App.4th at p. 774; *Heather Farms, supra,* 21 Cal.App.4th at p. 1574.) " ' " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*Rancho Mirage, supra,* at pp. 260–261.)

---

[3] The Association raises, for the first time in its reply brief, that the trial court abused its discretion by granting Plaintiffs' motion for preliminary injunction. "Normally, a contention may not be raised for the first time in a reply brief." (*People v. Peevy* (1998) 17 Cal.4th 1184, 1206; accord *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255 [" ' "[i]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party" ' "].) We do not consider arguments raised for the first time in the reply brief without a showing of good cause, which the Association did not make. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10.)

8

The Association argues we should apply de novo review because the "determination of the legal basis for an attorney fee award is a question of law, reviewed *de novo*."[4] We disagree. There is no dispute as to the "legal basis" for the court's attorney fee award. Both parties sought an award of attorney fees as the prevailing party under section 5975, subdivision (c). On appeal, both parties agree section 5975, subdivision (c) provides the statutory basis for the prevailing party to recover attorney fees. The Association's dispute is not with the legal basis for the trial court's attorney fee award, but with the "factual underpinnings" of the court's determination that Plaintiffs prevailed in this action.

III.

*No Abuse of Discretion in Trial Court's Determination of Prevailing Party*

In determining the prevailing party under the Davis-Stirling Act, "the trial court should 'compare the relief awarded on the [ ] claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made . . . by "a comparison of the extent to which each party ha[s] succeeded and failed to

---

4    The Association cites to *Conservatorship of Whitley* (2010) 50 Cal.4th 1206 (*Whitley*) and *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169 (*Connerly*) to argue for de novo review. These cases are inapposite because they involved " ' "the determination of whether the criteria for an award of attorney fees and costs . . . have been satisfied amounts to *statutory construction and a question of law*." ' " (*Whitley*, at pp. 1213–1214, italics added [addressing whether a litigant's nonpecuniary interests can disqualify him from eligibility for attorney fees under Code of Civil Procedure section 1021.5], quoting *Connerly*, at p. 1175 [determining whether the California Business Council can be assessed attorney fees under section 1021.5 as an " 'opposing part[y]' within the meaning of that statute"].) There is no issue of statutory construction here.

succeed in its contentions." ' " (*Almanor*, *supra*, 246 Cal.App.4th at p. 774, citing *Hsu*, *supra*, 9 Cal.4th at p. 876.)

The trial court engaged in that comparative analysis and determined that "Plaintiffs' main objective in filing suit was to require the Association to comply with . . . [the CC&Rs] before proceeding with the installation of the traffic signal." The court further found that Plaintiffs succeeded in their objective. By obtaining a TRO and a preliminary injunction, Plaintiffs compelled the Association to "immediately . . . obtain the written consent of its members" and were therefore "successful in their attempt to have the Association comply with the CC&Rs before installing the traffic signal." Accordingly, the court determined Plaintiffs were the prevailing parties entitled to their reasonable attorney fees.

We will not disturb the trial court's determination absent a clear showing of an abuse of discretion. (*Villa De Las Palmas*, *supra*, 33 Cal.4th at p. 94; *Rancho Mirage*, *supra*, 2 Cal.App.5th at p. 260; *Almanor*, *supra*, 246 Cal.App.4th at p. 774; *Heather Farms*, *supra*, 21 Cal.App.4th at p. 1574.) It is the Association's burden to demonstrate the trial court abused its discretion by " ' " 'exceed[ing] the bounds of reason.' " ' " (*Rancho Mirage*, *supra*, at p. 260.) However, rather than presenting their appeal under the applicable standard of review, the Association continues to press their "respectful disagreement with the factual foundation" for the trial court's conclusion "that the [P]laintiffs' primary objective was met in this case."

It argues the record does not support the trial court's finding that Plaintiffs' litigation objective was to obtain membership approval before installation of the traffic lights. It contends that "Plaintiffs' own pleadings and motions in this case reveal that their singular goal in this litigation was to try to prevent the construction of a traffic signal next to their home." It

10

further contends "[t]he *only* remedy which Plaintiffs sought for Breach of Governing Documents was money." Thus, the Association argues that since Plaintiffs failed to stop the construction of the traffic signal and failed to obtain any monetary relief, Plaintiffs were not the prevailing parties "as a matter of law." We disagree.

First, the Association's arguments ignore the governing standard of review. In deciding whether the trial court abused its discretion, we are bound by the substantial evidence rule. (*Salehi, supra*, 200 Cal.App.4th at p. 1154.) We presume the trial court's judgment is correct, with " ' "all intendments and presumptions . . . indulged to support the judgment[.]" ' " (*Ibid.*) " ' "[T]he trial court's resolution of any factual disputes arising from the evidence is conclusive." ' " (*Ibid.*) "[W]e do not substitute our judgment for that of the trial court when more than one inference can be reasonably deduced from the facts." (*Almanor, supra*, 246 Cal.App.4th at p. 776.)

Second, the record simply belies the Association's contentions and demonstrates the trial court's determination that Plaintiffs prevailed on a practical level was well within the bounds of reason. As set forth in the complaint, Plaintiffs' primary cause of action was for breach of the governing documents, wherein they alleged the Association breached the CC&Rs and exceeded its authority in failing to request a vote and obtain majority approval from its members before taking actions to install the traffic lights, including the expenditure of Association funds. In seeking a TRO, Plaintiffs argued the Association had "completely ignored" and "disregarded" the CC&Rs and its actions should be enjoined until the rights and responsibilities of the parties under the CC&Rs could be judicially determined.

11

In seeking a preliminary injunction, Plaintiffs again made clear their objective: "[T]he Association approved . . . the construction of traffic signals at Gates 2 and 6 improperly because the Association did not seek a vote of the Members of the Association. [¶] . . . [¶] *[Plaintiffs'] ultimate goal in this Action is not to prevent the construction of the [traffic lights]. It is to compel the Association to submit this project to a vote of the Members and to let them decide.* This authorizing procedure is required by the CC&Rs, Civil Code section 5605, . . . . If the Members decided to approve the project, Plaintiffs, as part of the Association, must live with that decision. [¶] Plaintiffs in this Motion [for a preliminary injunction] seek only to preserve the Status Quo until that vote can be had." (Italics added.)

Further still, Plaintiffs asserted the burden of an injunction on the Association was "miniscule" because "*it can simply hold a vote of the Members for the [installation of the traffic lights], vitiating an injunction.*" (Italics added.) Promptly after the issuance of the preliminary injunction, the Association did just that. It put the matter to a vote and obtained majority approval from its members for the traffic lights and, on the basis of that material change in facts, the court granted the Association's motion to dissolve the preliminary injunction. Only after the Association came into compliance with the CC&Rs did Plaintiffs voluntarily dismiss their entire action for mootness.

The Association argues, however, that Plaintiffs' voluntary dismissal of the action, without any finding of liability against it, compels the conclusion that it is the prevailing party, as a matter of law. In support of this argument, the Association relies on the statutory definition of "prevailing party" under the general cost statute of Code of Civil Procedure section 1032, subdivision (a)(4), which provides that a " '[p]revailing party' " includes "a

12

defendant in whose favor a dismissal is entered[.]" (Code. Civ. Proc. § 1032, subd. (a)(4).) But "the premise for this argument, that a litigant who prevails under the cost statute is necessarily the prevailing party for purposes of attorney fees, has been uniformly rejected by the courts of this state." (*Heather Farms*, *supra*, 21 Cal.App.4th at p. 1572.) And as noted by the *Heather Farms* court, "Code of Civil Procedure section 1032, subdivision (a) only defines ' "[p]revailing party" ' as the term is used 'in [that] section.' It does not purport to define the term for purposes of other statutes." (*Ibid.*) Moreover, elsewhere in its opening brief,[5] citing *Heather Farms*, the Association agrees the prevailing party under section 5975, subdivision (c), is determined by the pragmatic test of identifying "which party has prevailed on a 'practical level.' "

The Association also relies on *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94 (*Coltrain*) to argue Plaintiffs' voluntary dismissal of the action makes it the prevailing party. But *Coltrain* does not help advance the Association's argument. There, the trial court awarded attorney fees to defendants as "a prevailing defendant" under Code of Civil Procedure, section 425.16, subdivision (c), the fee-shifting provision of the anti-SLAPP statute. (*Coltrain*, *supra*, at p. 100.) Although concluding the trial court erroneously applied the standard under Code of Civil Procedure section 1032, subdivision

---

5    On March 16, 2021, the Association filed a Notice of Errata regarding its opening brief, indicating that it "inadvertently listed incorrect citations to the record" and filed with the notice, a "corrected copy of Appellant's Opening Brief" which "corrects such citation errors and makes no other changes other than to the form of the citations to the record." On March 18, 2021, we issued notice that the Association's Notice of Errata will be treated as a motion for leave to file an amended appellant's opening brief and will be considered concurrently with the appeal. We hereby grant the Association's unopposed motion for leave to file an amended opening brief.

(a)(4), the Court of Appeal affirmed the fee award.  (*Id.* at p. 107.)  In doing so, the Court of Appeal held that "where the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, *the trial court has discretion* to determine whether the defendant is the prevailing party for purposes of attorney[ ] fees under Code of Civil Procedure section 425.16, subdivision (c).  In making that determination, *the critical issue is which party realized its objectives in the litigation.*"  (*Ibid.*, italics added.)

The *Coltrain* court rejected "defendants' contention that a voluntary dismissal while a special motion to strike is pending should *automatically* entitle a defendant to attorney's fees."  (*Coltrain, supra,* 66 Cal.App.4th at p. 107.)  Rather, the court noted that "regardless of whether the action is a SLAPP suit or not, the plaintiff may have good faith reasons for the dismissal that have nothing to do with oppressing the defendant or avoiding liability for attorney's fees."  (*Ibid.*)  The *Coltrain* court also reiterated what the California Supreme Court has previously said on this subject:  " 'In particular, it seems inaccurate to characterize the defendant as the "prevailing party" if the plaintiff dismissed the action only after obtaining, by means of settlement or otherwise, all or most of the requested relief, or if the plaintiff dismissed for reasons, such as the defendant's insolvency, that have nothing to do with the probability of success on the merits.' "  (*Coltrain, supra,* 66 Cal.App.4th at p. 103, quoting *Santisas v. Goodin* (1998) 17 Cal.4th 599, 621–622.)

Here, the trial court acknowledged that "Plaintiffs eventually dismissed their claims without prejudice" and concluded "such conduct does not deprive them of prevailing party status."  It is a reasonable conclusion, from the litigation history, that Plaintiffs voluntarily dismissed the action because the Association's capitulation after issuance of the preliminary injunction had

14

mooted their action.  The court did not find and nothing in the record suggests, as the Association argues, that "[r]ather than face trial, Plaintiffs dismissed" their claims.

The Association's reliance on *Salehi*, *supra*, 200 Cal.App.4th 1146 is similarly unhelpful.  In *Salehi*, the plaintiff dismissed without prejudice eight of ten causes of action against her condominium association on the eve of trial because her construction expert suddenly became unavailable.  (*Id.* at pp. 1151–1152.)  The plaintiff obtained a continuance of trial on the remaining two causes of action for negligent misrepresentation and fraud, believing she would not need the expert to prove those claims.  (*Ibid.*)  Before the trial date, the association moved for attorney fees as the prevailing party on the eight dismissed causes of action.  (*Id.* at pp. 1152–1153.)  The Court of Appeal reversed the trial court's order denying the fee award.  (*Id.* at pp. 1155, 1162.)  In doing so, the Court of Appeal concluded that "[t]he record does not suggest that [plaintiff] would have prevailed on the merits.  It does not appear that she was ready to go forward procedurally and prove the case substantively."  (*Id.* at p. 1155.)  Here, unlike *Salehi*, the trial court specifically found "Plaintiffs have established a reasonable probability of success on the merits of their claim for breach of the Association's governing documents" when it issued the preliminary injunction enjoining the Association from proceeding with construction of the traffic signal at Gate 2 during the pendency of the lawsuit.

Third, the Association's focus on Plaintiffs' prayer for relief to argue the true intent of Plaintiffs' action was to prevent a traffic light from being installed, not enforcement of the governing documents, is misplaced.  In determining litigation success, the court respects substance rather than form.  (*Rancho Mirage*, *supra*, 2 Cal.App.5th at p. 260 ["We see nothing in the

15

Davis-Stirling Act that suggests we should give more weight to the form of a complaint . . . than to the substance of the claims asserted and relief sought, in determining whether an action is one 'to enforce the governing documents' in the meaning of section 5975."].) A prayer is not part of a cause of action. (*Berg v. Investors Real Estate Loan Co.* (1962) 207 Cal.App.2d 808, 815 ["It is elementary that the prayer is no part of the statement of the cause of action [citations] and that the issues involved are determinable from the facts alleged rather than from the prayer."].)

Moreover, while preventing the installation of the traffic light "might have been a litigation 'dream' " for Plaintiffs (*Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 127), it does not undercut their main litigation objective of requiring the Association to comply with the CC&Rs and obtain majority approval from its members before installing the traffic light. (See *ibid.* [Plaintiff homeowners were determined to be prevailing party despite not achieving "litigation 'dream' " of obtaining correction of building defect where they succeeded in compelling membership vote. "The fact that the membership did not vote to correct this defect in the building does not mean that the [plaintiffs] failed on their main litigation objective."].)

In sum, we conclude the trial court's determination that Plaintiffs prevailed on a practical level was supported by substantial evidence and well within the bounds of reason. The Association has failed to demonstrate any abuse of discretion in the court's award of attorney fees to Plaintiffs and denial of attorney fees to it under section 5975, subdivision (c).

16

## IV.

### *Association's Remaining Arguments*

A.    *Any Claim of Error as to Inclusion of Javaheri and Dehghani in the Fee Award Is Forfeited*

The Association argues the trial court erred in awarding attorney fees to Javaheri and Dehghani because they "are not the owners of the property" and therefore have "no right to enforce the CC&Rs."  As such, the Association argues, Javaheri and Dehghani "cannot be 'prevailing parties' in an action to enforce the governing documents of the Fairbanks Ranch Association."

In support of this claim of error, the Association dedicates two short paragraphs in their opening brief, cites to *no legal authorities whatsoever* for their contentions, and provides unhelpful record citations.  The record citations merely refer this court back to the Association's Memorandum of Points and Authorities in Opposition to Plaintiffs' Notice of Motion for Attorneys' Fees and Costs, to pages which contain almost verbatim the same two short paragraphs as in their opening brief, and to a Notice of Lodgment which indicates the Fairbanks Ranch CC&Rs were at some point lodged as an exhibit with the trial court.  Having not seen the CC&Rs, we do not know what the governing documents provide.

The Association also fails to provide any discussion of how the inclusion of Javaheri and Dehghani in the fee award resulted in prejudice.[6]  Indeed, it does not even challenge the reasonableness of the fee amount.

---

6    When the Association raised this standing argument at the hearing on attorney fees, Plaintiffs' counsel argued "all litigation efforts in this case are consolidated . . . there's [no] reasonable way to chop up the plaintiffs in this case."  The trial judge asked the Association, the work for all plaintiffs are "all intertwined, though, aren't they?"  Despite these questions being raised below, the Association does not address them on appeal.

17

"To prevail on appeal, an appellant must establish both error and prejudice from that error. [Citation.] In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 (*WFG*).)

Simply put, the reviewing court is not required to develop the Association's arguments or search the record for supporting evidence. For these reasons, we conclude the Association has forfeited the claim of any prejudicial error as it relates to the inclusion of Javaheri and Dehghani in the fee award. (*WFG*, *supra*, 51 Cal.App.5th at p. 894.)

B.     *Section 1717 Does Not Provide the Association with Any Basis for Recovering Attorney Fees Pursuant to the CC&Rs*

In addition to section 5975, subdivision (c), the Association also sought an award of attorney fees pursuant to the CC&Rs, which provides the Association would be entitled to reimbursement of its legal expenses if a member sued it and the Association was " 'successful or sustained in its position in such suit.' " Although not raised in the trial court or in its opening brief, the Association argues in its reply brief that its "claim in this case that it is the prevailing party *is* based upon a contractual right to attorneys' fees pursuant to Civil Code section 1717[.]" Although we do not consider arguments raised for the first time in a reply brief absent good cause (see footnote 3 *ante*), we quickly dispose of the Association's argument.

Section 1717 provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are

18

incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, . . . shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).) Section 1717, subdivision (b)(2) creates an exception to the recovery of attorney fees under this statute, and states that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." (§ 1717, subd. (b)(2).) That exception codifies the holding in *International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, in which the Supreme Court "determined that a defendant could not recover attorney fees under section 1717 when the plaintiff voluntarily dismissed the action before trial." (*Hsu*, *supra*, 9 Cal.4th at pp. 872–873.)

Thus, notwithstanding the trial court's determination that the Association was not the prevailing party, and we find no abuse in that determination, the Association may not recover attorney fees under section 1717, subdivision (b)(2), since Plaintiffs voluntarily dismissed their lawsuit.

DISPOSITION

The judgment is affirmed. Plaintiffs are entitled to their costs on appeal.

DO, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

19

Filed 7/15/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHAMPIR, LLC, et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>FAIRBANKS RANCH<br>ASSOCIATION,<br><br>    Defendant and Appellant. | D077384<br><br><br><br>(Super. Ct. No. 37-2018-00028289-CU-NP-NC)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed June 22, 2021 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties