[No. B056182. Second Dist., Div. Three. Apr. 23, 1993.]

ROBERT L. MELAMED, as Trustee, etc., et al., Plaintiffs and Respondents, v.
CITY OF LONG BEACH, Defendant and Appellant.

[No. B057258. Second Dist., Div. Three. Apr. 23, 1993.]

ROBERT L. MELAMED, as Trustee, etc., et al., Plaintiffs and Appellants, v.
CITY OF LONG BEACH, Defendant and Appellant.

**COUNSEL**

John R. Calhoun, City Attorney, and Thomas A. Vyse, Deputy City Attorney, for Defendant and Appellant.

Cooper, Epstein & Hurewitz and Richard D. Agay for Plaintiffs and Respondents and for Plaintiffs and Appellants.

**OPINION**

**KLEIN, P. J.**—Defendant and appellant City of Long Beach (the City) appeals a judgment following a grant of summary judgment in favor of plaintiff and respondent Robert L. Melamed, trustee under the William L. Melamed, Sr., 1991 Trust (Melamed).

Melamed appeals from a postjudgment order limiting his award of attorney fees. The City cross-appeals from the postjudgment order.

### SUMMARY STATEMENT

Melamed listed his real 'property (the Property) for sale at $8,950,000. About 27 months later, Melamed entered into a buy/sell agreement with the City for $8 million. Melamed later discovered the City had appraised his property at $8,690,000 before the sale. Based on that valuation, Melamed sought to recover an additional $690,000 from the City, plus interest. The trial court found for Melamed.

The essential issue presented is whether Government Code section 7267.2 controls this fact situation.[1] That statute requires a public entity, prior to exercising its power of eminent domain, to offer just compensation in an amount no less than the approved appraisal value of the property.

Because the City purchased the Property in a routine buy/sell transaction, rather than in a precondemnation situation, section 7267.2 by its terms is inapplicable.

The judgment and order therefore are reversed with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

Melamed owned the subject real property, a sizeable parcel in the Port of Long Beach. In December 1983, Melamed entered into a listing agreement with Coldwell Banker, offering the Property for sale at $8,950,000.

On March 22, 1985, the City commissioned Christy Petrofanis (Petrofanis) to prepare an appraisal of the Property, which was still unsold. On August 1, 1985, Petrofanis submitted an appraisal of the Property to the City, valuing it at $8,690,000.

Thereafter, the City engaged in negotiations with Melamed for purchase of the Property. It refused to advise Melamed of the amount of the appraisal.

On March 10, 1986, Melamed and the City entered into a real estate purchase agreement (the Agreement) for the sale of the Property for a total purchase price of $8 million.

The Agreement contained an attorney fee clause at paragraph 11, which states: "In the event of litigation between the parties hereto arising out of this Purchase Agreement or the underlying transaction, the prevailing party shall be entitled to reasonable attorney's fees."   .

Melamed subsequently learned of the $8,690,000 appraisal. Melamed then demanded the City pay $690,000 in "just compensation" for the Property. That sum represented the difference between the sale price and the higher appraised value. The City rejected the demand.

Melamed then filed suit, pleading causes of action for violation of section 7267.2, fraud, relocation assistance (§ 7260 et seq.), negligence, breach of contract, rescission, and reformation.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

The City answered, alleging it had paid Melamed just compensation, and pleading various affirmative defenses.

On January 30, 1989, the City filed a motion for summary judgment, contending section 7267.2 was inapplicable to this transaction because there had been no "taking" of private property. Instead, a willing seller and a willing buyer had negotiated a purchase price in the open market.

On May 3, 1989, Melamed filed a motion for summary adjudication of issues, arguing, inter alia, section 7267.2 required the City to offer him fair compensation in an amount not less than fair market value according to an appraisal approved by the City.

The motions were heard on June 2, 1989. The trial court denied the City's motion, ruling "Section 7267.2 . . . . spells out very specifically the actions which the Governmental entity must take in acquiring property."[2]

Therefore, the trial court granted Melamed's motion for summary adjudication and ruled Melamed was entitled to judgment on the first cause of action for violation of section 7267.2, in the amount of $690,000 plus interest. It denied Melamed's request for summary adjudication on his rescission and negligence claims.

On July 25, 1989, the City filed a petition for writ of prohibition and/or mandate, contending the trial court should have granted its motion for summary judgment. (*Long Beach* v. *Superior Court* (Oct. 12, 1989) B043516 [nonpub. opn.].)

The petition was denied by Division Four of this court. The order states: "Given the apparent irreconcilable conflict between the applicable statutory provisions, respondent did not clearly abuse its discretion. (See *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)"

The City also filed a purported appeal from the order granting Melamed's motion for summary adjudication of issues. On January 4, 1990, Division Seven of this court granted Melamed's motion to dismiss the City's appeal. (*Melamed* v. *Long Beach (Jan. 4, 1990) B044229 [nonpub. opn.].)*

On January 22, 1991, after Melamed dismissed his remaining causes of action against the City, the trial court entered judgment for Melamed on the

---

[2]The reporter's transcript discloses the trial court was less than sanguine about its decision. At the outset of the hearing, it tentatively ruled for Melamed. Soon thereafter, the trial court indicated "I am going to retract my tentative." Shortly after that, it stated "I am going to flip flop." The trial court then ruled in accordance with its tentative decision.

first cause of action, and directed the City to pay Melamed $690,000, plus $235,412.87 in interest, together with attorney fees and costs.

On January 31, 1991, the City filed an appeal from the final judgment.

On February 8, 1991, Melamed filed a memorandum of costs. Claiming an entitlement to enhancement of attorney fees for having conferred a benefit upon the public, Melamed sought $370,000 in attorney fees plus $488 in costs.

On March 7, 1991, the trial court awarded Melamed attorney fees in the sum of $167,555.99. On March 22, 1991, Melamed appealed from the postjudgment order restricting the award of attorney fees to that amount.

On March 29, 1991, the City filed a cross-appeal from the postjudgment order for costs.

CONTENTIONS

On the main appeal, the City contends section 7267.2 is inapplicable and confers no benefit upon Melamed.

Melamed argues the City's contention is barred by the law of the case doctrine, and in any event, he is entitled to relief under section 7267.2.

DISCUSSION

1. *No merit to Melamed's reliance on law of the case doctrine.*

Melamed contends the law of the case doctrine bars reconsideration of the City's contention that section 7267.2 is inapplicable. He relies upon the appellate court's earlier denial of the City's writ petition. In that petition the City challenged the trial court's denial of its summary judgment motion. The argument is without merit.

In *Kowis* v. *Howard* (1992) 3 Cal.4th 888, 891 [12 Cal.Rptr.2d 728, 838 P.2d 250], the Supreme Court held the pretrial denial of a writ petition does not establish law of the case unless the denial is accompanied by a written opinion following the issuance of an alternative writ.

Therefore, the summary denial of the City's writ petition, which was accompanied by a brief comment but without issuance of an alternative writ, oral argument, or a full written opinion, does not preclude consideration of the issue on the City's appeal from the final judgment. (*Kowis, supra,* 3 Cal.4th at pp. 894-895.)

To preclude the City's challenge to the applicability of section 7267.2, Melamed also seeks to rely on the dismissal of the City's earlier, purported appeal from the order granting Melamed's motion for summary adjudication of issues. That order was nonappealable because not all causes of action had been disposed of at the time, and thus, there was no final judgment. Therefore, the purported appeal was properly dismissed on procedural grounds and has no law of the case effect on the instant appeal from the final judgment.

2.  *Standard of review.*

   a.  *Appellate scrutiny of summary judgment.*

■  The purpose of the summary judgment procedure is not to try the issues but merely to discover, through the medium of affidavits, whether there are issues to be tried and whether the parties possess evidence which demands the analysis of trial. (*Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661]; *Orser* v. *George* (1967) 252 Cal.App.2d 660, 669 [60 Cal.Rptr. 708].)

■  Because the trial court's ruling on a motion for summary judgment is one of law based upon the papers presented, the appellate court makes an independent determination of their construction and effect. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744]; *Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357]; *Hayman* v. *Block* (1986) 176 Cal.App.3d 629, 640 [222 Cal.Rptr. 293].)

   b.  *Statutory interpretation is a question of law for this court.*

The applicability of section 7267.2 to this case requires interpretation of the statute, which is a question of law for this court's independent determination. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

   c.  *Principles of statutory construction.*

In addressing the issue at hand we begin with the language of the statute. (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].)
■  In analyzing section 7267.2, we are mindful of the settled principle in California law that when statutory language is " 'clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*In re Waters of Long Valley Creek Stream System* (1979)

25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656]; accord *Rojo, supra,* 52 Cal.3d at p. 73.)

The literal words of a statute may be disregarded, however, to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593].)

### 3. *Overview of statutory scheme.*

■ Melamed contends he is entitled to compensation based on the appraisal value of the Property even though he negotiated a sale of the Property to the City for a lesser sum. Melamed's entire case turns on the proper interpretation of section 7267.2.

That section is found within a Government Code chapter captioned Relocation Assistance (§ 7260 et seq.) (the Act). It provides in substance a public entity which acquires real property for public use shall compensate a displaced person for relocation expenses and certain other losses. (§ 7262; *Superior Strut & Hanger Co.* v. *Port of Oakland* (1977) 72 Cal.App.3d 987, 992 [140 Cal.Rptr. 515].)

Section 7267 states in an introductory manner: "In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the public programs, and to promote public confidence in public land acquisition practices, public entities shall, to the greatest extent practicable, be guided by the provisions of Sections 7267.1 to 7267.7, inclusive . . . ."

Section 7267.1 provides: "(a) The public entity shall make every reasonable effort to acquire expeditiously real property by negotiation. [¶] (b) Real property shall be appraised before the initiation of negotiations, . . . ."

Section 7267.2, which is our focus, states in relevant part: "(a) *Prior to adopting a resolution of necessity pursuant to Section 1245.230 and initiating negotiations for the acquisition of real property,* the public entity shall establish an amount which it believes to be just compensation therefor, and shall make an offer to the owner or owners of record . . . . In no event shall the amount be less than the public entity's approved appraisal of the fair market value of the property." (§ 7267.2, italics added.)

4. *Section 7267.2 is inapplicable and unavailing to Melamed because the City acquired the Property in an ordinary purchase rather than precondemnation.*

Melamed's position appears to be that a public entity has no right to purchase property at a price below market value.[3] However, section 7267.2, which is the basis of his argument, has no application to this fact situation involving an ordinary negotiated buy/sell agreement between a public entity and a willing seller.

For the reasons discussed below, we conclude a public entity is required to offer the appraisal amount only in connection with an exercise of its *eminent domain power.* Therefore, a public entity is not required to offer the appraisal amount in every acquisition of real property.

This conclusion rests in part on the clear language in the first phrase of the section in controversy. Section 7267.2 commences with the words *"Prior to adopting a resolution of necessity* pursuant to [Code of Civil Procedure] Section 1245.230 *and* initiating negotiations for the acquisition of real property . . . ."* (Italics added.) A resolution of necessity is a term of art. The Eminent Domain Law found in Code of Civil Procedure section 1230.010 et seq. requires the adoption of such a resolution before a public entity may take property by eminent domain. (Code Civ. Proc., §§ 1240.040, 1245.220.)[4]

Code of Civil Procedure section 1245.230, cited in section 7267.2, spells out the necessary contents of a resolution of necessity. These include: a general statement of the public use for which the property is to be taken; a reference to the statute authorizing the acquisition by eminent domain; and, a declaration the governing body of the public entity has determined the public interest and necessity require the proposed project, the proposed project is compatible with the greatest public good and the least private injury, *and that the offer required by section 7267.2 has been made to the owner of record.* (Code Civ. Proc., § 1245.230.)

---

[3]With respect to those transactions which are governed by section 7267.2, we observe subdivision (b) thereof allows a public entity to pay less than fair market value if the owner offers to sell the property at a specified price below what the public entity believes to be just compensation, and the public entity offers a price which is equal to the owner's asking price.

[4]Code of Civil Procedure section 1240.040 states: "A public entity may exercise the power of eminent domain only if it has adopted a resolution of necessity that meets the requirements of Article 2 (commencing with Section 1245.210) of Chapter 4 [Code of Civil Procedure section 1245.210 et seq.]."

Similarly, Code of Civil Procedure section 1245.220 provides: "A public entity may not commence an eminent domain proceeding until its governing body has adopted a resolution of necessity that meets the requirements of this article."

The City engaged in no such conduct prior to entering into negotiations with Melamed concerning the Property. To the contrary, the City pursued the acquisition as a garden-variety negotiation of a buy/sell agreement.

Our interpretation that section 7267.2 requires an offer in the appraisal amount to be made only prior to an exercise of the power of eminent domain is bolstered by the balance of the first sentence of the statute. The language "Prior to adopting a resolution of necessity" is followed by "*and* initiating negotiations[.]" (§ 7267.2, italics added.) Ordinarily, the word "and" connotes a conjunctive meaning, while the word "or" implies a disjunctive or alternative meaning. (*People* v. *Pool* (1865) 27 Cal. 572, 581; *Houge* v. *Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257]; 58 Cal.Jur.3d, Statutes, § 136, p. 531.)

If Melamed is correct and an offer in the appraisal amount were required in *every* acquisition by a public entity, section 7267.2 would have to read "Prior to adopting a resolution of necessity . . . *or* initiating negotiations for the acquisition of real property . . . ." Or, the statute simply might state "Prior to initiating negotiations for the acquisition of real property . . . ."

It seems clear the language of section 7267.2, interpreted pursuant to the usual rules of statutory construction, means what it says. It mandates an offer in the appraisal amount *only* by a "public entity planning to initiate eminent domain proceedings through a resolution of necessity." (*City of San Jose* v. *Great Oaks Water Co.* (1987) 192 Cal.App.3d 1005, 1013 [237 Cal.Rptr. 845].) The plain meaning of the statute supports the City's contention section 7267.2 is inapplicable to an ordinary purchase of property by a public entity.

5. *Section 7267.2's narrow scope does not encompass other means by which a public entity may acquire property.*

Additional support for our interpretation may be found in the fact public entities may acquire property subject to eminent domain by other means.

Code of Civil Procedure section 1240.130, within the Eminent Domain Law, states: "Subject to any other statute relating to the acquisition of property, any public entity authorized to acquire property for a particular use by eminent domain *may also acquire such property* for such use by grant, *purchase*, lease, gift, devise, contract, *or other means*." (Italics added.) Thus, a public entity is authorized to acquire property by negotiation or other means in *any* case in which it may condemn property. (Cal. Law Revision Com. com., Deerings' Ann. Code Civ. Proc., § 1240.130 (1981) p. 50.)

Also, Code of Civil Procedure section 1230.030 states: "Nothing in this title requires that the power of eminent domain be exercised to acquire property necessary for public use. Whether property necessary for public use is to be acquired *by purchase or other means or by eminent domain* is a decision left to the discretion of the person authorized to acquire the property." (Italics added.) Thus, the decision whether to acquire property by purchase, or other means, or by exercise of the power of eminent domain, is left to the *discretion* of the public entity. (Cal. Law. Revision Com. com., Deering's Ann. Code Civ. Proc., § 1230.030 (1981) p. 3.)

These sections of the Eminent Domain Law reflect the Legislature is well aware of the existence of *alternatives* to acquisition by eminent domain. In view of the various means by which a public entity may acquire property, had the Legislature intended to require an offer in the appraisal amount in *every* type of acquisition by a public entity, it would not have specified in section 7267.2 that such an offer be made "Prior to adopting a resolution of necessity . . . and initiating negotiations[.]"

We conclude the Legislature did not intend to give section 7267.2 the broad meaning ascribed to it by Melamed. The Legislature clearly limited the statute to acquisitions which contemplate the adoption of a resolution of necessity.

6. *Plain meaning of section 7267.2 does not result in an absurdity, nor does it frustrate the purpose of the statute.*

The plain meaning of section 7267.2, limiting the requirement of an appraisal value offer to the eminent domain context, is eminently reasonable, contrary to Melamed's contentions.

Where an involuntary taking is contemplated, the requirement of section 7267.2 that a public entity offer market value as just compensation *prior* to exercising its eminent domain power is entirely appropriate. Requiring such conduct by a public entity serves the salutary purposes of allowing acquisitions to be expedited and lessening the likelihood of litigation. (§ 7267.)

However, outside the eminent domain context, no public policy is served by regulating the minimum price at which a public entity may purchase property. To the contrary, compelling a public entity to pay more than a seller is willing to accept is pointless and results in a waste of scarce public resources.

This case presents a good example of these principles. Some 27 months after first offering the Property for sale at $8,950,000, Melamed willingly

accepted the City's $8 million offer. If Melamed questioned the adequacy of the offer, he was free to hire his own appraiser *before* entering into the Agreement. However, at this juncture, no public policy is advanced by allowing Melamed, or any similarly situated seller, to renegotiate the agreed sale price due to the fortuity the purchaser happened to be a public entity.[5]

### 7. *Melamed's arguments are unconvincing.*

#### a. *Purposes of the statute are not frustrated.*

Melamed contends the City's interpretation thwarts the purposes set forth in the Act. (§ 7260 et seq.) As indicated, section 7267 states in relevant part: "In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the public programs, and to promote public confidence in public land acquisition practices, public entities shall, to the greatest extent practicable, be guided by the provisions of Sections 7267.1 [et seq.] . . ."

The City's reading of the statute does not promote litigation, nor does it impede acquisition by agreements with owners. Where, as in the instant case, a public entity and an owner negotiate and arrive at an agreement, there is no controversy. However, in the event the parties fail to reach agreement and the public entity thereafter intends to proceed by eminent domain, the transaction would be governed by section 7267.2. At that point, the public entity would be required to offer an amount no less than its approved appraisal of the fair market value of the property, *prior to* adopting a resolution of necessity and initiating negotiations. (§ 7267.2, subd. (a).) If those negotiations result in an agreement, there is no controversy. It is only when such negotiations fail to produce an agreement that litigation would ensue.

We are also unpersuaded by Melamed's argument that under the City's interpretation, an owner would have no confidence a fair price was being offered until condemnation was commenced. An owner is free to hire an appraiser to determine the fairness of the public entity's offer. Further, the owner need not await condemnation to ascertain the fairness of the offer because prior to adoption of a resolution of necessity, the public entity is required to provide the owner with a written statement of, and summary of the basis for, the amount it established as just compensation. (§ 7267.2, subd. (a).)

---

[5]It is unnecessary to address the City's contention the appraised value was less than $8,690,000.

### b.  *Case law unavailing to Melamed.*

Melamed's reliance on *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345] is misplaced.

*Klopping* does not speak to the issue presented here. That case involved recovery for diminution in value caused by precondemnation announcements. *Klopping* merely recognized a public entity may acquire real property by negotiated sale or by eminent domain. (*Klopping, supra,* 8 Cal.3d at pp. 51-52, fns. 3, 4.)

Moreover, at the time *Klopping* was decided in 1972, the crucial first sentence of section 7267.2 began " '*Before the initiation of negotiations for real property,* the public entity shall establish an amount which it believes to be just compensation therefor, and shall make a prompt offer to acquire the property for the full amount so established. . . .' " (*Klopping, supra,* 8 Cal.3d at p. 51, fn. 3, italics added; Stats. 1971, ch. 1574, § 12, p. 3161.) By a 1982 amendment, the following language was inserted at the beginning of the sentence: "*Prior to adopting a resolution of necessity pursuant to Section 1245.230 . . . .*" (Stats. 1982, ch. 1059, § 3, p. 3834, italics added; § 7267.2.)

Thus, section 7267.2 as amended in 1982, governs this case.[6] The statute now clearly limits the requirement of an appraisal value offer to the precondemnation situation, and does not apply to all real property negotiations by a public entity.

*Superior Strut & Hanger Co., supra,* 72 Cal.App.3d 987, cited by Melamed, likewise is inapposite. The issue there was the entitlement of a person to relocation benefits when that person's property is acquired by a public entity for a public use. The court held a condemnation action was not essential to the recovery of such benefits because the relocation assistance provisions are applicable to acquisition of property by any means. (*Id.,* at p. 994.) However, said decision also precedes the 1982 amendment to section 7267.2 which narrowed the requirement of an appraisal value offer.

### 8.  *Interpretation of section 7274 not reached.*

The City contends even assuming section 7267.2 applies to the instant transaction, Melamed cannot prevail because section 7274 bars any relief.

---

[6]The post-1982 amendments to section 7267.2 did not affect the language in issue here. (See Historical and Statutory Notes, 32A West's Ann. Gov. Code (1993 pocket pt.) § 7267.2, p. 226.)

Somewhat surprisingly, section 7274, which was adopted in 1971 and has never been amended, states in broad language: "Sections 7267 to 7267.7, inclusive, *create no rights or liabilities* and shall not affect the validity of any property acquisitions by purchase or condemnation." (Italics added.)

In opposition, Melamed urges, inter alia, the statute cannot mean what it says because "For every wrong there is a remedy." (Civ. Code, § 3523.) Melamed also cites *City of San Jose, supra,* 192 Cal.App.3d at page 1013, for the proposition that the provisions of section 7267.2 *"are not merely discretionary guidelines, but mandatory requirements* which must be observed by any public entity planning to initiate eminent domain proceedings through a resolution of necessity." (Italics added.)

However, while *City of San Jose* acknowledged section 7274 in a footnote (*City of San Jose, supra,* 192 Cal.App.3d at p. 1012, fn. 4), that opinion did not discuss the effect of section 7274 on a litigant's cause of action under 7267.2.

Other courts also have cited section 7274 in a cursory manner for the premise that sections 7267 through 7267.7 create no rights or liabilities. (See e.g. *Parking Authority* v. *Nicovich* (1973) 32 Cal.App.3d 420, 428 [108 Cal.Rptr. 137]; *Bakman* v. *Department of Transportation* (1979) 99 Cal.App.3d 665, 684 [160 Cal.Rptr. 583]; *Toso* v. *City of Santa Barbara* (1980) 101 Cal.App.3d 934, 958, fn. 14 [162 Cal.Rptr. 210]; *Baldwin Park Redevelopment Agency* v. *Irving* (1984) 156 Cal.App.3d 428, 438 [202 Cal.Rptr. 792]; *Smith* v. *City and County of San Francisco* (1990) 225 Cal.App.3d 38, 51 [275 Cal.Rptr. 17].)

However, in light of the extensive statutory scheme set forth in the Act at sections 7267 through 7267.7 to protect owners and occupants, a question arises as to whether the Legislature literally intended in section 7274 to preclude any remedy whatsoever for any violation thereof. If the plain meaning of section 7274 is not what the Legislature intended, the statute needs clarification. (See *Malibu Committee for Incorporation* v. *Board of Supervisors* (1990) 222 Cal.App.3d 397, 410 [271 Cal.Rptr. 505].)

Given our holding that section 7267.2 was inapplicable to this ordinary buy/sell transaction between Melamed and the City, it is unnecessary for this court to reach the issue of whether section 7274 bars a cause of action alleging a violation of section 7267.2. That issue properly will be presented and thoroughly briefed and resolved in a case where section 7267.2 does apply.

*9.  Postjudgment order for costs infirm because the City is the prevailing party.*

Melamed has appealed from the postjudgment order, contending the award of attorney fees was insufficient. The City has cross-appealed from the order.

Because we conclude section 7267.2 is inapplicable, the City, not Melamed, is the prevailing party. In view of the reversal on the main appeal, the attorney fee award to Melamed cannot stand. Instead, the City is entitled to recover its reasonable attorney fees pursuant to the attorney fee clause in the Agreement.

### DISPOSITION

The January 22, 1991, judgment is reversed and the matter is remanded with directions to enter judgment for the City.

The March 7, 1991, postjudgment order for costs is reversed and the matter is remanded for a determination of the amount of costs and reasonable attorney fees to which the City is entitled under paragraph 11 of the Agreement as the prevailing party.

The City shall recover costs on appeal.

Croskey, J., and Hinz, J., concurred.

A petition for a rehearing was denied May 21, 1993, and respondents' petition for review by the Supreme Court was denied July 15, 1993. Mosk, J., was of the opinion that the petition should be granted.