Filed 9/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN/JANE DOE,<br><br>    Plaintiff and Appellant,<br>v.<br><br>RYAN McLAUGHLIN,<br><br>    Defendant and Respondent. | A161534<br><br>(San Francisco City & County<br>Super. Ct. No. CPF-18-516431) |

Forty-four years ago our Supreme Court admonished that "The purpose of litigation is to resolve participants' disputes, not compensate participating attorneys. Our courts are sufficiently burdened without combat kept alive solely for attorney fees." (*International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, 224.) We reiterated the admonition in 2006 (*Abouab v. City and County of San Francisco* (2006) 141 Cal.App.4th 643, 675), an admonition that is as true today—if not truer—than it was in 1978.

Appellant Doe and, perhaps more significantly, his[1] appellate attorney apparently did not read the admonition, and they certainly did not heed it, as they continue in what is nothing more than a quest for fees rejected by the trial court. Bad enough. Worse, the quest is by a person described as an

---

[1] Appellant is designated "John/Jane Doe." However, for consistency with the briefing, we use the pronouns "he" or "him" when referring to Doe. The use of such pronouns is not intended to identify Doe's gender.

"Internet troll" (a label he does not deny), an Internet troll who has had two accounts suspended by Twitter because his postings violated its terms of service—and an Internet troll who seeks to justify his post(s) of a mugshot of respondent McLaughlin that an Illinois court had ordered expunged and destroyed.

Doe's quest began with his motion under Code of Civil Procedure[2] section 1987.1 et seq., seeking to quash a subpoena issued in 2018 by an Illinois court in connection with a litigation pending here. By the time Doe's motion came to be heard in San Francisco County Superior Court—almost two years later—the Illinois litigation had been resolved. And the trial court here dismissed Doe's motion. Undeterred, Doe persists, maintaining that he is entitled to attorney fees under section 1987.2, subsection (c), which provides that a party shall be entitled to attorney fees if he or she demonstrates three things: (1) "the moving party prevails" on the motion to quash; and (2) "the underlying action arises from the moving party's exercise of free speech rights on the Internet"; and (3) "the respondent has failed to make a prima facie showing of a cause of action." Doe must demonstrate *all* three things. He has demonstrated *none*.

Enough is enough, and the time has come to put a stop to such conduct, and that we do, affirming the trial court.

---

[2] All undesignated section references are to the Code of Civil Procedure.

## BACKGROUND[3]

### The Illinois Proceedings

In August 2016, McLaughlin, the head of a Chicago-based public relations consulting firm, was arrested in Chicago for his alleged involvement in a domestic dispute with his former girlfriend, Olivia P. In January 2018, an Illinois court ordered all records in McLaughlin's criminal case expunged, and ordered the Chicago Police Department, the Illinois State Police Bureau of Identification, and the FBI to destroy McLaughlin's arrest records and photograph (on paper and electronic format), including the mugshot.

Meanwhile, in 2017, McLaughlin filed an action in Illinois seeking an order of protection against Olivia P. In April 2018, the parties settled that action, and the terms of the settlement agreement were incorporated in a judgment entered on April 27. While entering judgment, the court ordered sealed the settlement agreement and all of the documents submitted in connection with the Illinois action. The Illinois court retained jurisdiction to enforce the terms of the settlement.

Despite the expungement and sealing orders, Doe, on multiple

---

[3] Much of the record in this case has been filed under seal, and the parties have filed both redacted and unredacted briefs under California Rules of Court, rule 8.46(b) and (g). To maintain the confidentiality of the sealed documents, we discuss only the general nature of those documents and arguments therein. We do note, however, certain details relating to the core facts in this case—the underlying domestic dispute between McLaughlin and Olivia P. and Doe's tweets—may be properly referred to in light of the unsealed record and redacted briefs.

Notwithstanding this determination, out of an abundance of caution, we provided the parties with notice under California Rules of Court, rule 8.46(f)(3), advising them of our intent to include in this opinion four specified references or statements pertaining to the core facts above and permitting them to file any opposition to our proposed action, and any reply thereto. McLaughlin replied, advising he had no opposition. Doe did not reply.

occasions in June and July 2018, and under two different Twitter accounts, posted messages on Twitter ("tweets") disclosing information about McLaughlin's prior arrest. In those tweets, Doe uploaded McLaughlin's mugshot taken in connection with the arrest, and above the mugshot was a reference to a charge for "domestic battery—bodily harm." At times, the tweets were captioned with comments such as "Huh?"; "Wut?"; "Discuss this"; "Proud of this guy?"; and "Nice." And Doe tagged several of McLaughlin's business contacts and clients, as well as local media outlets, in the tweets.

In early August 2018, McLaughlin requested that Twitter remove the tweets, and on August 10, Twitter suspended Doe's accounts after finding the tweets violated its terms of service.

McLaughlin filed in the Illinois court an ex parte motion to conduct post-judgment discovery pertaining to Doe's Twitter accounts. On August 28, the Illinois court granted the motion, and issued a subpoena to Twitter requiring the production of documents related to Doe's Twitter accounts. The Illinois court also issued "letters rogatory" to the San Francisco County Superior Court, a document requesting that a foreign court take evidence from a specific person within its jurisdiction and return the evidence for use in a pending case. (3 Nichols Ill. Civ. Prac. (2022) Depositions § 40:22; Ill. Sup. Ct. Rules, rule 205(c).)

**The California Proceedings**

On September 25, 2018, pursuant to section 2029.350 and the Illinois subpoena, McLaughlin served another subpoena—this time under the authority of the San Francisco County Superior Court (trial court)—to be served on Twitter in San Francisco. In the subpoena, McLaughlin requested the production of business records relating to Doe's Twitter accounts and information personally identifying the holders of the accounts.

4

Doe hired counsel in California and, on November 27, filed in the trial court a motion to quash the subpoena under section 1987.1, and requesting attorney fees and costs under section 1987.2, subdivision (c).[4]  In the motion to quash, Doe argued he had a First Amendment right to engage in anonymous speech and a right to privacy under the California Constitution. He also contended that McLaughlin failed to make a prima facie showing that the tweets were actionable.  Doe further asserted that the subpoena was procedurally defective, as well as overbroad and oppressive.  For these reasons, Doe maintained he was entitled to attorney fees.

On December 7, McLaughlin filed an unopposed motion for an order sealing Doe's memorandum of points and authorities in support of the motion to quash, the declaration of Doe's attorney, and any reply by Doe and other documents filed in support of the motion.

On April 16, 2019—and despite McLaughlin not having filed an opposition to the motion—Doe filed a "reply" in support of his motion to quash requesting over $19,000 in attorney fees and costs.  McLaughlin filed a response, along with his attorney's declaration, seeking a continuance of the hearing on the motion to quash and explaining his failure to file an opposition.

On April 23, the trial court granted McLaughlin's motion to seal.  And on April 30, the court continued the hearing on the motion to quash to May 21 and permitted McLaughlin to file an opposition, and Doe, a reply.

---

[4] Doe also requested sanctions under section 1987.2, subdivision (a), which gives the trial court discretion to award reasonable expenses and attorney fees if it finds the motion to quash "was made or opposed in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive."  He does not argue here that he was entitled to attorney fees under that provision.

5

On May 15, McLaughlin filed opposition to Doe's motion to quash and request for fees. McLaughlin sought another continuance of the hearing on the motion pending the resolution of the Illinois motion to quash. As to the merits, McLaughlin argued that the subpoena validly sought to determine whether Olivia P. or someone acting as her agent had violated the settlement agreement and/or the sealing order by posting the tweets about McLaughlin. McLaughlin also asserted that Doe's tweets were not protected under the First Amendment because they were intended purely to harass, intimidate, or threaten him. McLaughlin further sought fees and costs for opposing the motion to quash.

On May 17, Doe replied to the opposition, now requesting over $34,000 in attorney fees. Doe argued that McLaughlin did not make a prima facie showing of cause of action for breach of the settlement agreement. Doe also maintained that McLaughlin failed to establish the tweets were not entitled to First Amendment protection.

Some nine months later, on February 18, 2020, Doe filed in the trial court a status update on the Illinois proceedings on his Illinois motion to quash. Doe stated that the parties in the Illinois action recently had resolved their remaining disputes obviating the need for pursuing the subject discovery. In light of this resolution, the Illinois court dismissed the subpoena and denied as moot Doe's motion to quash. Despite the dismissal of the motion to quash in the Illinois court, Doe requested that the trial court nevertheless decide the California motion to quash.

On February 25, McLaughlin filed a response to the status update, urging the trial court to follow the Illinois court and also deny as moot Doe's California motion to quash. McLaughlin also requested the court deny Doe's request for fees, arguing that neither party could claim to have prevailed on

6

the motion to quash within the meaning of section 1987.2, subdivision (c).

On August 21, the trial court conducted the hearing on Doe's motion to quash, in the course of which the court stated it keeps "getting hung up on the first thing I said here, which is . . . 1987.2 . . . assumes that the movant has prevailed," going on to advise Doe's counsel that "you haven't prevailed here." And on August 24, the court issued its order denying the motion, stating that "[m]ovant's counsel reports that the motion to quash subpoena duces tecum has been mooted by action in an Illinois court, so the motion is dismissed. No sanctions are awarded, as movant was unable to cite any case law permitting sanctions under these circumstances."

On October 21, Doe filed a notice of appeal (A161534).[5] And on May 20, 2021, Doe filed a petition for writ of mandate also challenging the order denying attorney fees on the same grounds asserted in the appeal (A162677).

## DISCUSSION

### Appealability

At the threshold, we must determine whether the order denying Doe's request for fees and costs under section 1987.2, subdivision (c) is appealable.

Generally, discovery orders are not appealable. (*H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 885 (*H.B. Fuller*).) "However, appellate courts have recognized an exception to this general rule for discovery orders issued in California requiring production of information to be used in an action pending in another jurisdiction, which orders the courts have found are final and appealable." (*Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 464, citing *Adams v. Woods* (1861) 18 Cal. 30, 31; *H.B. Fuller*, *supra*,

---

[5] On November 12, 2020, McLaughlin filed a notice of cross-appeal and on March 9, 2021, we dismissed the cross-appeal due to McLaughlin's failure to timely file a record on appeal.

151 Cal.App.4th at p. 885; *Warford v. Medeiros* (1984) 160 Cal.App.3d 1035, 1041; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021) ¶ 2:252.1.) In *H.B. Fuller*, a plaintiff litigating in Minnesota against the defendant, an unknown former employee who allegedly posted confidential information online, served a California subpoena to compel an Internet service provider to identify the defendant. (*H.B. Fuller*, at pp. 883–884.) The trial court denied the anonymous defendant's motion to quash the subpoena, and the defendant appealed. The Court of Appeal held that the order was appealable because the discovery question presented by the defendant's motion to quash was the whole end and purpose of the discovery proceeding in California. (*Id.* at pp. 885–886.)

Doe argues, and McLaughlin agrees, that under the reasoning of *H.B. Fuller* the trial court's order denying Doe's request for fees and costs is appealable because it is "ancillary to litigation in another jurisdiction and operates as the last word by a California trial court on the matters at issue." (*H.B. Fuller*, *supra*, 151 Cal.App.4th at pp. 885–886.) We agree with the parties and conclude that the challenged order is appealable because it operates as the last word by a California court on the discovery matter at issue.[6]

Having concluded that the order denying attorney fees and costs is

---

[6] Our conclusion is not altered by section 2029.650, subdivision (a) of the Interstate and International Depositions and Discovery Act (Act), pursuant to which McLaughlin served the subpoena on Twitter. That provision states that no order under that Act is appealable, but may be reviewed only by petition for an extraordinary writ of mandate. (§ 2029.650, subd. (a).) We agree with Doe that because the trial court denied Doe's request for attorney fees and costs under section 1987.2, subdivision (c), not the Act—which contains no attorney fees provision—section 2029.650, subdivision (a) does not govern.

appealable, we need not consider Doe's alternative argument that we should construe this appeal as a writ or decide his companion petition for writ of mandate filed after the notice of appeal. Since the case is ready for decision on the appeal, we elect to proceed on the appeal and dismiss the writ petition by separate order filed this date.

We therefore turn to the appeal—and easily conclude it has no merit.

## Doe Has Not Demonstrated the Right to Attorney Fees

### *The Law*

Section 1987.1 states that "[a] person whose personally identifying information . . . is sought in connection with an underlying action involving that person's exercise of free speech rights" may file a motion to quash a subpoena requesting that information. (§ 1987.1, subds. (a), (b)(5).)

Section 1987.2, subdivision (c) provides: "If a motion is filed under Section 1987.1 for an order to quash . . . a subpoena from a court of this state for personally identifying information . . . for use in an action pending in another state . . . of the United States . . . , and that subpoena has been served on any Internet service provider, or on the provider of any other interactive computer service . . . , [(1)] if the moving party prevails, *and* [(2)] if the underlying action arises from the moving party's exercise of free speech rights on the Internet *and* [(3)] the respondent has failed to make a prima facie showing of a cause of action, the court shall award the amount of the reasonable expenses incurred in making the motion, including reasonable attorney's fees." (Italics added.) The use of the word "and" connotes that all three statutory criteria must be met to justify a fee award. (See *Melamed v. City of Long Beach* (1993) 15 Cal.App.4th 70, 79.) Thus, even a prevailing party on a motion to quash may not recover fees and costs under section 1987.2, subdivision (c) " 'unless the underlying action arose from the moving

9

party's exercise of free speech rights on the Internet and the responding party has failed to make a prima facie showing in support of the cause of action asserted.' " (*Roe v. Halbig* (2018) 29 Cal.App.5th 286, 302–303 (*Halbig*).)

Section 1987.2, subdivision (c) has been described as "a form of anti-SLAPP protection" (Burke et al., Cal. Practice Guide: Anti-SLAPP Litigation (The Rutter Group 2021) ¶ 2:19) "[b]ecause of the close link between the objective of the anti-SLAPP statute [section 425.16 et seq.] and the public policy animating section 1987.2, subdivision (c)." (*Halbig, supra,* 29 Cal.App.5th at p. 304; see generally *id.* at pp. 300–304 [discussing section 1987.2, subdivision (c)'s relationship with the anti-SLAPP statute and legislative history].) In particular, "the legislative history of section 1987.2, subdivision (c) highlights the Legislature's focus on the burden on free speech posed by subpoenas derived from out-of-state cases targeting anonymous speakers on the Internet; the Legislature's concern with the costs of litigating cases threatening free speech; and the Legislature's intent to protect the exercise of free speech on the Internet. The anti-SLAPP statute reflects similar considerations." (*Halbig*, at p. 303.)

### *Prevailing Party*

According to Doe, this appeal turns on the first requirement of section 1987.2, subdivision (c), and that he "prevail[ed]" on his motion to quash. Relying on *Halbig, supra*, 29 Cal.App.5th 286, Doe argues that an individual who has filed a motion to quash can "prevail" within the meaning of the statute even if the party serving the subpoena voluntarily withdraws it before a judge rules on the motion. In *Halbig*, an anonymous blogger (Roe) moved to quash a subpoena issued by an independent investigator of a school shooting (Halbig) to an online service provider seeking to reveal Roe's identity for purposes of Halbig's Florida defamation action against Roe and others. (*Id.* at pp. 293–294.) After Roe filed the motion to quash but before

10

the hearing, Halbig withdrew the subpoena. At the subsequent hearing, the trial court found that Roe was the "prevailing party" under section 1987.2, subdivision (c) and awarded fees and costs to Roe. (*Halbig*, at pp. 294–295.) On appeal, Halbig argued that because he voluntarily withdrew the subpoena before the hearing on the motion to quash, Roe's motion was moot, and a party cannot "prevail" on a moot question. (*Id.* at pp. 297–298.)

The Court of Appeal disagreed and affirmed the award of fees to Roe. (*Halbig*, *supra*, 29 Cal.App.5th at pp. 304–305, 309.) In interpreting the word "prevails" in section 1987.2, subdivision (c), the court examined the statute's legislative history, which, as noted above, revealed a focus on the same free-speech concerns animating the anti-SLAPP statute. (*Halbig*, at pp. 300–304.) The court then noted the anti-SLAPP statute authorizes the filing of a special motion to strike a cause of action against a person arising from any act of that person in furtherance of his or her constitutional rights free speech (§ 425.16, subd. (b)(1)) and that a "prevailing party" on such motion is entitled to recover attorney fees and costs (§ 425.16, subd. (c)). (*Halbig*, at pp. 303–304.) Given the similar purposes underlying the anti-SLAPP statute and section 1987.2, subdivision (c), the court determined "prevails" in section 1987.2, subdivision (c) should be given a similar meaning as "prevailing party" in the anti-SLAPP provision. (*Halbig*, at pp. 300–304.)

The *Halbig* court then observed that appellate courts have held that "a defendant may qualify as the 'prevailing party' under the anti-SLAPP statute even where the SLAPP suit has been voluntarily dismissed prior to a judicial ruling on the anti-SLAPP motion to strike." (*Halbig*, *supra*, 29 Cal.App.5th at p. 304.) Applying the reasoning of those cases to section 1987.2, subdivision (c), the court concluded, " 'the moving party' [on a motion to quash] can 'prevail[ ]' under section 1987.2, subdivision (c) even if the

11

respondent has dismissed the subpoena prior to judicial determination of the motion to quash." (*Halbig*, at pp. 304–305.) Accordingly, it held "the trial court correctly rejected Halbig's argument that Roe's motion to quash became moot when Halbig voluntarily dismissed the subpoena." (*Id.* at p. 305.)

The next issue considered in *Halbig* was whether the trial court correctly determined Roe prevailed on the motion to quash. (*Halbig*, *supra*, 29 Cal.App.5th at p. 305.) In reviewing that finding, the *Halbig* court articulated two approaches taken by courts when determining a prevailing party under the anti-SLAPP statute. (*Halbig*, at pp. 305–306.) Under the first approach, the prevailing party is " 'the party [that] realized its objectives in the litigation.' " (*Halbig*, at pp. 305, 306, citing *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94, 107 (*Coltrain*).) "[A] plaintiff's voluntary dismissal of the complaint prior to a ruling on the anti-SLAPP motion to strike creates a rebuttable presumption that the defendant who filed the motion to strike is the prevailing party." (*Halbig*, at p. 305, citing *Coltrain*, *supra*, 66 Cal.App.4th at p. 107.) "Since the defendant's goal is to make the plaintiff go away with its tail between its legs, ordinarily the prevailing party will be the defendant. The plaintiff, however, may try to show it actually dismissed because it had substantially achieved its goals through a settlement or other means, because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits." (*Coltrain*, at p. 107.) As for the second approach, the trial court is required to "determine the merits of the motion to strike notwithstanding the prior dismissal of the underlying suit." (*Halbig*, at pp. 305–306, citing *Liu v. Moore* (1999) 69 Cal.App.4th 745, 751; *Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 215; *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1456.)

The *Halbig* court analyzed whether Roe prevailed on his motion to

12

quash under both approaches: "[W]e need not elect between these approaches because Halbig does not affirmatively establish that the trial court committed error when it found that Roe prevailed. [Citation.] Halbig's withdrawal of the Google subpoena achieved Roe's litigation objective of retaining his anonymity, and Halbig does not contend that he withdrew the subpoena 'for . . . reasons unrelated to the probability of success on the merits.' [Citation.] In addition, the trial court's determination that Halbig 'failed to make a prima facie showing of a cause of action' necessarily means that Roe's motion to quash would have been granted absent Halbig's dismissal of the subpoena [citations], and Halbig does not challenge that finding here." (*Halbig*, *supra*, 29 Cal.App.5th at p. 306.)

Doe contends that under *Halbig* the trial court erred as a matter of law in finding his motion to quash was rendered moot by the dismissal of the subpoena and motion to quash in the Illinois action. Had the trial court decided his motion to quash on its merits, Doe claims, it would have found that he was the prevailing party, entitling him to fees under section 1987.2, subdivision (c). We disagree. Assuming without deciding that *Halbig's* lengthy analysis, with its singular focus on anti-SLAPP law, was correct, the posture in that case—the trial court found the moving party "prevailed," a ruling the Court of Appeal affirmed—is 180 degrees from that here, where the trial court held as it did, along the way noting to Doe "[y]ou haven't prevailed here." As we have put it, "we will not disturb the trial court's determination of the prevailing party absent a clear abuse of discretion." (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1158, citing *Nasser v. Superior Court* (1984) 156 Cal.App.3d 52, 59.) Doe provides no basis for disturbing the court's determination.

Doe argues he was the prevailing party under the first approach

described in *Halbig* because he realized his litigation objectives following the dismissal of the subpoena by retaining his anonymity. (*Halbig*, *supra*, 29 Cal.App.5th at p. 305.) McLaughlin counters that he has rebutted any presumption Doe was the prevailing party by showing the subpoena was dismissed because McLaughlin "substantially achieved [his] goals through a settlement" and " 'for other reasons unrelated to the probability of success on the merits.' " (*Coltrain*, *supra*, 66 Cal.App.4th at p. 107; *Halbig*, at p. 306.) We agree with McLaughlin. It is undisputed that the very reason for the dismissal of the subpoena and motion to quash was the parties' resolution of the underlying action.

Doe also contends he was the prevailing party under the second approach because he would have prevailed on the merits of his motion to quash. (*Halbig*, *supra*, 29 Cal.App.5th at pp. 305–306.) This argument, as in *Halbig*, dovetails with Doe's argument as to the third requirement under section 1987.2, subdivision (c): that McLaughlin failed to make the appropriate prima facie showing in support of his subpoena. We address this argument in our discussion of that requirement below, ultimately rejecting it.

Doe also asserts that his motion to quash would have been granted on the merits for the separate reason that McLaughlin cannot show a "compelling need" for the discovery sought. But, as McLaughlin observes, the authority Doe cites for this proposition, *Digital Music News LLC v. Superior Court* (2014) 226 Cal.App.4th 216 (*Digital Music*), is no longer good law. Our Supreme Court in *Williams v. Superior Court* (2017) 3 Cal.5th 531, 557 disapproved of *Digital Music* to the extent it imposes a "compelling need" requirement. Doe not only concedes this point in his reply brief, but also backpedals by claiming—inaccurately—that he did not rely upon or discuss, but merely mentioned, *Digital Music*'s compelling need test in his opening

14

brief.[7]

Doe has failed to establish he prevailed on his motion to quash. (§ 1987.2, subd. (c).)

### *Free Speech on the Internet*

McLaughlin also argues that Doe cannot establish reversible error because he has failed to demonstrate another requirement for attorney fees under section 1987.2, subdivision (c), and in support McLaughlin points us to a glaring omission in Doe's opening brief—that Doe makes no attempt to discuss, let alone demonstrate, that "the underlying action arises from [his] exercise of free speech rights on the Internet." (§ 1987.2, subd. (c).)[8]

---

[7] We remind counsel of Rules of Professional Conduct, rule 3.3(a)(1): "A lawyer shall not: [¶] . . . [¶] (1) knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." (Footnotes omitted.) We also remind counsel of our high court's admonition that "[a]ttorneys are officers of the court and have an ethical obligation to advise the court of legal authority that is directly contrary to a claim being pressed." (*In re Reno* (2012) 55 Cal.4th 428, 510 [citing former Rule 5-200, now Rules 3.3 and 3.4, of the Rules of Professional Conduct], superseded by statute on other grounds as stated in *In re Friend* (2021) 11 Cal.5th 720, 728; see Cal. Rules Prof. Conduct, rule 3.3(a)(2) ["A lawyer shall not: [¶] . . . [¶] (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . ."], fns. omitted.)

[8] Although the trial court's order denying Doe's motion noted that it "has been mooted by action in an Illinois court," we may consider an additional ground on which the order may be upheld. (See *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 925, fn. 6 ["Respondents are free to urge affirmance of the [order] on grounds other than those cited by the trial court"], citing *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 (*D'Amico*).) And, of course, we may affirm a decision correct on any theory regardless of the trial court's reasoning: "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because

Initially, McLaughlin argues that Doe has forfeited any argument regarding this statutory requirement by failing to address it in his opening brief, where there is nothing more than a passing reference in his statement of facts regarding a First Amendment argument made below. We agree. An appellant abandons an issue by failing to raise it in the opening brief. (*Western Growers Association v. Occupational Safety & Health Standards Bd.* (2021) 73 Cal.App.5th 916, 947–948; *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 572–573, fn. 18.) And Doe's discussion of the issue in his reply brief comes too late. (See *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [" ' " 'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before. . . . ' " [Citations.]' "], quoting *Shade Foods, Inc v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 895, fn. 10.) This rule is based on considerations of fairness: withholding a point until the reply brief deprives "the respondent the opportunity to answer it or require[s] the effort and delay of an additional brief by permission." (*Neighbors v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

We reject Doe's attempts to overcome forfeiture. He suggests that he was excused from raising any arguments related to the second statutory requirement because the trial court's order did not address it. That is wrong, as a corollary to the principle stated above—that we review the trial court's

given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*D'Amico, supra*, at pp. 18–19, citing *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329; accord, *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 613; Eisenberg, *supra*, ¶ 8:214.)

16

ruling, not its reasoning—is that " '[t]o justify a reversal, it is incumbent upon the appellant to show an erroneous ruling, and not merely bad reasoning or mistaken views of the law.' " (*Davey v. Southern Pacific Co.*, *supra*, 116 Cal. at pp. 329–330.) Doe also argues that "the question here is not whether appellant is entitled to judgment on the First Amendment issue based on arguments presented *on appeal* but whether he is so entitled based on arguments presented *in the trial court*." He then asks us to decide the issue based on the arguments presented below. This request is improper. Doe may not incorporate by reference arguments advanced from the proceedings below, rather than briefing them on appeal. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20; *Salehi v. Surfside III Condominium Owners' Association* (2011) 200 Cal.App.4th 1146, 1162.)

We thus are justified in disregarding Doe's reply brief discussion on whether the underlying action arose from the exercise of his free speech rights on the Internet. (§ 1987.2, subd. (c).) But even if Doe's new arguments in reply were not forfeited, they are unavailing.

Doe first argues, in conclusory fashion, the subpoena in this case seeking his personally identifying information "implicates [his] First Amendment right to remain anonymous." However, he does not develop this point in any meaningful way. Although Doe cites to legal authority, he does not explain how that authority applies here. We therefore may disregard the point. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [absence of cogent legal argument allows reviewing court to deem the contention forfeited]; see also *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["citing cases without any discussion of their application to the present case results in forfeiture"]; *ibid.* ["We are not required to examine undeveloped claims or to supply arguments for the litigants"].)

17

Doe then proceeds to respond to McLaughlin's arguments in his respondent's brief, contending that McLaughlin "has failed to establish the Tweets were not protected by the First Amendment." Doe misperceives his role as appellant: it is Doe's, not McLaughlin's, burden to affirmatively demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) This burden remains the same whether or not the respondent files a brief or provides argument or authority on an issue. (*Fleming Distribution Company v. Younan* (2020) 49 Cal.App.5th 73, 84, fn. 8; *Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 226–227.)

In any event, Doe's attempts to refute McLaughlin's arguments fall short. According to McLaughlin, Doe cannot show that the underlying action arose out of his exercise of free speech rights (§ 1987.2, subd. (c)), in part because his tweets amounted to "targeted harassment" undeserving of First Amendment protection.[9] McLaughlin cites to several cases discussing the principle that the First Amendment's right to freedom of speech is not unlimited and examples where speech has been held excluded from constitutional protection. (See *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 484–486 [First Amendment " 'not intended' to embrace all subjects," such as "fighting words"]; *Aguilar v. Avis Rent a Car System, Inc.* (1999) 21 Cal.4th 121, 141–142 [injunction against racially abusive speech in

---

[9] McLaughlin separately argues that Doe, through his tweets, divulged information in violation of the Illinois court's order sealing documents and in doing so, "finds no refuge in the First Amendment." McLaughlin explains that "[a] court does not run afoul of the First Amendment when it issues reasonable orders to seal documents. [Citation.] Because the First Amendment is not directed at private action, parties do not infringe when they agree to destroy documents, or not to disparage one another, as conditions of settlement." We need not address this argument, as it assumes that Doe has argued that the sealing order itself violated his right to free speech. The record does not disclose any such argument was raised.

violation of FEHA does not violate the First Amendment as such speech is not protected]; *Spencer v. Mowat* (2020) 46 Cal.App.5th 1024, 1040 ["tortious acts" including "the harassment of nonlocals . . . , the threats, and the intimidation" were not "protected speech of petitioning activity" under anti-SLAPP statute]; *United States v. Osinger* (9th Cir. 2014) 753 F.3d 939, 946 [" '[T]he Supreme Court has carved out some limited categories of unprotected speech, including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct' "].)

Preliminarily, Doe contends McLaughlin raised his argument "[f]or the first time on appeal." We disagree. McLaughlin raised the point in opposition to the motion to quash.

Doe's counterarguments also fail on the merits. Notably, Doe does not dispute McLaughlin's assertion that the Twitter posts were harassment. Instead, Doe argues, "the cited cases hold only that harassing speech is not protected where it is integral to criminal or tortious misconduct; they do not hold that such speech is per se unprotected." And, he claims, the harassing speech was not tied to any criminal or tortious misconduct. These arguments miss the mark.

It is true that some of the cited cases identify particular categories of speech historically excluded from First Amendment protection, such as obscenity, libel, fighting words, or utterances integral to lawless action. (See, e.g., *Gerawan Farming, Inc. v. Lyons, supra,* 24 Cal.4th at pp. 484–486.) But even if speech does not fall within those categories—and Doe suggests the tweets here do not—this does not necessarily mean the speech cannot be constitutionally proscribed in a particular context. (See *Konigsberg v. State Bar of Cal.* (1961) 366 U.S. 36, 49 [rejecting the view that "where the constitutional protection [under the First Amendment] exists, it must

19

prevail"]; see, e.g., *Hill v. Colorado* (2000) 530 U.S. 703, 716 [the right to approach someone on the way to a healthcare facility to hand the person a leaflet and to attempt to change the person's views not within historically unprotected categories of speech, but may be constitutionally restricted in order to protect the "unwilling listener's interest in avoiding unwanted communication"].)

Further, while it is also true " 'there is no categorical "harassment exception" to the First Amendment's free speech clause' " (*Rodriguez v. Maricopa County Community College Dist.* (9th Cir. 2010) 605 F.3d 703, 708), the First Amendment does not guarantee the right to harassment of another, even where the harassment is accomplished through speech that might otherwise be protected. (See, e.g., *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1410 [song lyrics in teenage boyfriend's harassing letter addressed to girlfriend's mother were not protected by First Amendment; boyfriend was not attempting to entertain, but instead used lyrics to ridicule and annoy mother]; *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 192, fn. 11 [patient's distribution of flyers about former therapist "entitled to 'less First Amendment concern' " because it was intended less as a means of addressing an issue of public importance rather than to harass the therapist].) Thus, Doe's claim that there is no categorical ban on harassing speech under the First Amendment, while correct, does nothing to dispel McLaughlin's assertion that the tweets were targeted harassment falling outside of First Amendment protection. By failing to tackle head on McLaughlin's point, Doe leaves the point essentially unrebutted.

In sum, Doe has not established that "the underlying action arises from [his] exercise of free speech rights on the Internet." (§ 1987.2, subd. (c).)

### *Prima Facie Showing of a Cause of Action*

Finally, on the subject of the three requirements in section 1987.2,

20

subdivision (c), we noted above that within his discussion of his claimed prevailing party status, Doe addresses the third requirement, arguing that McLaughlin failed to make a prima facie showing of a cause of action for breach of the settlement agreement. Doe contends that McLaughlin "admitted at the hearing below that he had no prima facie claim for breach of the [s]ettlement [a]greement" and "never offered any evidence of any type of claim against anyone—including [Olivia P.] or [Doe]." These assertions are based on a mischaracterization of the record.

The portion of the hearing transcript cited by Doe does not indicate McLaughlin "admitted . . . he had no prima facie claim." Rather, as McLaughlin clarifies, his "counsel was explaining to [the trial court] that the underlying Illinois case . . . was not new litigation, but a post-judgment discovery proceeding opened to investigate potential violations of the Settlement Agreement. [Citation.] Reading the entire exchange, it is clear that counsel was explaining the posture of the Illinois matter, not conceding anything about the relative strength of McLaughlin's arguments or evidence." Further, Doe's contention that McLaughlin "never offered any evidence of any type of claim against anyone" plainly contradicts the record. McLaughlin's brief sets forth the evidence he presented in support of his opposition to the motion to quash. McLaughlin's declaration, in particular, stated facts supporting his belief that his former girlfriend or an agent of hers was behind the subject tweets, evidence that he argued tended to show she violated the sealing order and/or the settlement agreement terms.

Indeed, Doe acknowledges in his reply brief that McLaughlin did present the evidence described above. Only then does Doe confront such evidence by arguing it was insufficient to make the necessary prima facie showing. This argument is much different from—and impliedly contradicts—

21

the opening brief arguments explicitly stating that no such "evidence of any type of claim against anyone" was presented at all. As we have explained, we do not consider arguments raised for the first time in a reply brief. (*Julian v. Hartford Underwriters Ins. Co.*, *supra,* 35 Cal.4th at p. 761, fn. 4.) "An appellant's duty attaches at the outset. It would be unfair to permit an appellant to wait to argue his substantive points until after the respondent exhausts [his] only opportunity to address an issue on appeal. As a general rule, points not addressed until a reply brief will not be considered unless good reason is shown for failing to address them earlier. [Citation.]" (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10.) None has been shown here.

Doe, therefore, has presented no legally cognizable argument that McLaughlin "has failed to make a prima facie showing of a cause of action" for breach of the settlement agreement. (§ 1987.2, subd. (c).)

In sum and in short, Doe has failed to affirmatively demonstrate he has met all three requirements to justify an award of attorney fees under section 1987.2, subdivision (c). He thus fails to show that the denial of his request for attorney fees was wrong.

Doe nonetheless touts, as a matter of policy, that upholding the trial court's decision would thwart the purpose of section 1987.2, subdivision (c) of " ' "allow[ing] those whose . . . information [is] sought to recover their costs and attorneys' fees in resisting abusive subpoenas, and [to] create a disincentive for seeking such subpoenas in California in the first place." ' " (*Halbig*, *supra*, 29 Cal.App.5th at p. 302.) But Doe overlooks that the abuse referred to by the Legislature concerns situations in which a subpoenaing party intends by the subpoena to chill the valid exercise of free speech, particularly where there is no evidence of defamation or other actionable

22

cause of action.  (See *id.* at pp. 301–303.)  Thus, it is the constitutionally protected right of free speech that is at the heart of section 1987.2, subdivision (c).  Given the obvious relevance of the right to free speech to the statute, and Doe's failure to address that salient issue in any serious way here, his policy arguments ring hollow.

On a final note, we address Doe's request that, were we to "direct judgment on the First Amendment issue," we should "remand with directions to award [him] attorney fees in an amount determined by the trial court should [it] find the underlying action arose from [Doe's] exercise of free speech."  We reject this wholly inappropriate request.  Doe, for the reasons explained, has provided no basis for reversal.  In asking us to reverse anyway, he essentially invites us to not only ignore fundamental principles of appellate review requiring him to affirmatively demonstrate error (*Jameson v. Desta, supra,* 5 Cal.5th at pp. 608–609), but also needlessly prolong the litigation—in a case, no less, that has been settled by the actual parties.

## DISPOSITION

The order denying Doe's request for fees and costs is affirmed.  Doe's companion petition for writ of mandate (A162677) is dismissed by separate order filed this date.  McLaughlin shall recover his costs on appeal.

23

 

                                        _____

                                        Richman, Acting P. J.

We concur:


_____

Stewart, J.


_____

Mayfield, J. *


*Doe v. McLaughlin* (A161534)

      *Judge of the Mendocino Superior Court, Judge Cindee Mayfield, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                          San Francisco County Superior
                                      Court

Trial Judge:                          Honorable Richard B. Ulmer

Attorney for Plaintiff and            Law Office of Gerald Clausen;
Appellant, John/Jane Doe:             Gerald A. Clausen

Attorney for Defendant and            Walczak Law; Kenneth M.
Respondent, Ryan McLaughlin:          Walczak; Andrew M. Purdy.